Argued June 1, affirmed June 22, 1915.

# MILWAUKEE MECHANICS' INS. CO. *v.* RAMSEY.

(149 Pac. 542.)

**Insurance—Fire Insurance—Subrogation of Insurer.**

1. Where a mortgagee insures the hypothecated property at his own expense, the insurer, paying a loss by fire to such mortgagee to the amount of the debt, is subrogated to the mortgagee's right in such debt, since the insurance contracted and paid for by the mortgagee in effect makes the insurance company a surety to the holder of the mortgage for the payment of the debt.

Insurance—Fire Insurance—Subrogation of Insurer.

2. Where insured property is burned by the tortious act of one not a party to the contract, the insurer paying the loss, is subrogated *pro tanto* to the chose in action the payee has against the tortfeasor by reason of his insurable interest.

Insurance—Fire Insurance—Subrogation of Insurer.

3. Realty was insured against fire, the loss being payable to a mortgagee as its interest might appear; otherwise to the insured. Within the term of the policy the property was destroyed by fire, and upon the mortgagee and owner suing the insurance company the mortgagee recovered judgment for the amount of its secured debt, while the owner failed to recover because he had contracted to sell, violating a policy restriction. The insurance company paid the mortgagee's judgment, and demanded that the mortgagee assign to it the owner's note and mortgage, which was refused. Thereupon the company sued the mortgagee and the owner, claiming subrogation to the rights of the mortgagee against the owner, and seeking to foreclose the security and recover the amount of the debt. *Held,* that the insurance company could not recover, since by the policy it agreed with the owner to pay a certain designated person, the mortgagee, in case of a loss, but did not agree to pay the owner's debt to the mortgagee as such.

[As to insurer's right to subrogation, see note in 44 Am. St. Rep. 732.]

From Tillamook: WEBSTER HOLMES, Judge.

Department 1.   Statement by MR. JUSTICE BURNETT.

This is an action by the Milwaukee Mechanics' Insurance Company, a corporation, against A. Ramsey, E. U. Wagy, Tillamook County Bank, a corporation, and Tillamook City, a municipal corporation.

The plaintiff, a Wisconsin company engaged in the business of insurance against loss by fire in this state, insured the laundry of the defendant Ramsey in the sum of $2,000, making the loss payable to the Tillamook County Bank, mortgagee, as its interest might appear; otherwise to the insured. The policy contained the usual restrictions rendering it void if the interests of the insured should be other than unconditional and sole ownership, if the subject of insurance were a building upon ground not owned by the insured in fee simple, if any change, other than by the death

of the insured, should take place in the interest, title or possession of the subject of insurance, or if other insurance, whether valid or not, should be effected upon the property without the consent of the company. This insurance was in consideration of a premium of $60 paid by Ramsey, and the policy was executed and delivered to him. Afterward, during its period, not being so permitted by the company, Ramsey entered into an agreement in writing with Bailey and Wagy, defendants, whereby he agreed to and did sell to them, and they agreed to purchase from him, all the property described in the policy, together with the land upon which it was situated; they paying $1,000 on account, assuming the mortgage to the bank, and agreeing to pay an additional balance of purchase money. They also subsequently insured the property without the consent of the company. It was provided in the policy issued to Ramsey:

"That if with the consent of the company any interest under the policy shall exist in favor of a mortgagee, * * the conditions of said policy shall apply in the manner expressed in such provisions and conditions of insurance relating to such interest as shall be written upon, attached to, or appended to the policy."

But there was no such stipulation attached to that instrument. During the term mentioned in the policy the insured property was destroyed by fire, entailing a loss in excess of the amount of insurance. It is disclosed that afterward Ramsey and the Tillamook County Bank, mortgagee, instituted an action against the company to recover the insurance, in which litigation Ramsey failed, and the bank obtained judgment for the amount of its secured debt. The company paid this judgment, and demanded that the bank assign to it the note and mortgage of Ramsey, which was

refused.   As a consequence the plaintiff brings this suit, claiming that it is entitled to be subrogated to the rights of the bank under the note and mortgage against Ramsey, and seeks to foreclose the security and recover the amount of the debt.   A general demurrer to the complaint was sustained by the Circuit Court, and, as plaintiff refused to plead further, a decree was entered dismissing the suit at its cost, and it appeals.

AFFIRMED.

For appellant there was a brief over the name of *Messrs. Veazie, McCourt & Veazie,* with an oral argument by *Mr. J. C. Veazie.*

For respondents there was a brief over the names of *Mr. H. T. Botts* and *Mr. Sidney S. Johnson,* with an oral argument by *Mr. Botts.*

MR. JUSTICE BURNETT delivered the opinion of the court.

We note at the outset that the insurance was effected by the mortgagor at his own expense under the policy, in which he is designated as the insured, and which insures his property, and appoints the mortgagee as the one to receive payments of the loss to the extent of its interest; otherwise, it is to be paid to Ramsey.

1. It is well settled that if a mortgagee, having, as he does, an interest in preserving the property pledged to him as security, insures the same at his own expense, and a loss by fire occurs, the insurer, paying the loss to the insured mortgagee to the amount of the debt, is subrogated to the means of enforcing payment of the original obligation by the debtor.   In such instances the claim is not extinguished until payment by the one primarily liable.   All that has happened in

that respect, is a change of creditors.  The reason is
that the insurance contracted and paid for by the
mortgagee has the effect of making the insurance com-
pany a surety to the holder of the mortgage for the
payment of the debt.  Having liquidated the same, the
insurer is subrogated to the rights of the one to whom
payment is made, which is the same as though he had
signed as surety and paid the promissory note, for the
debt is really what is insured in such cases.  In very
truth the mortgagee has nothing else to insure, and
when the debt is paid his policy lapses.  The transac-
tion is an instance of a contract directly between the
mortgagee and the insurer, and is worked out like
any other surety stipulation, with the resulting sub-
rogation.

2. Again, if insured property is burned by the
tortious act of one not a party to the policy, the insur-
ance company, paying the loss to anyone to whom by
the terms of the policy payment must be made, is sub-
rogated *pro tanto* to the chose in action the payee has
against the tort-feasor.  The reason in such a case is
that, but for the wrong resulting in destruction of the
property, no liability would have accrued against the
insurance company; but as it has neither privity of
estate or contract with the incendiary, and is neverthe-
less compelled by the policy to pay for the result of
the tort, its reimbursement is accomplished by subro-
gation.

3. The transaction described in the complaint, of which
a *résumé* has been given, does not fall within either of
these classes.  We read in the complaint that the com-
pany is empowered to engage in the business of insur-
ance against loss by fire.  The policy which appears
in the record insures Ramsey, not the plaintiff, against
"all direct loss or damage by fire, except as otherwise

provided,'' upon the building and contents described in the instrument.   By it the company agrees with Ramsey, and not with another, to pay a certain designated person in case of a loss.   It does not agree to pay Ramsey's debt.   The application to his obligation of the proceeds of the insurance in case of loss is a matter between Ramsey and the bank.   What became of the money is no concern of the plaintiff after it paid the bank.   It did not insure the debt.   It insured the building.   If Ramsey had burned the house, the mortgagee would have had an action against him for the tort, in that he damaged it by depreciating the value of the mortgaged property.   Because such burning would have resulted in the company being compelled to pay the loss, it would have been entitled to subrogation to the rights of the bank to recover damages from Ramsey under the second illustration given at the outset.   It is not charged in the complaint that Ramsey was in any way to blame for the fire.   He incurred no liability on that account to the company or to the bank.   The plaintiff did not pay Ramsey's debt, and hence has no privity with that obligation entitling it to subrogation.   As Ramsey did not burn the building, there is no transaction of his which entails liability upon the company, either directly or indirectly, and which would give rise to the privity entitling it to subrogation.   If there is to be any subrogation, it must be for the reason that the mortgagee has some hold upon the mortgagor to make him perform the duty which the plaintiff was compelled to discharge. The latter was obligated to pay for the fire, but Ramsey was not.   Having no power to make Ramsey reimburse it for the burning, the bank could not impart any such authority to the plaintiff by subrogation:

*Fire Assn.* v. *Patton,* 15 N. M. 304 (107 Pac. 679, 27 L. R. A. (N. S.) 420).

In brief, for a consideration, the company agreed with Ramsey to pay a loss, and not a mortgage to the bank. We cannot import into the contract a stipulation to the effect that Ramsey should not only pay the premium, but also reimburse the company for the loss. It is not the intention of the parties that Ramsey should thus carry all the risk, besides paying the premium. The plaintiff was paid for assuming the risk, and has only complied with its contract by payment of the loss. It is not entitled to anything beyond its stipulation. We have examined all the authorities cited by the plaintiff to sustain the postulate that where the policy has become void as to the interests of the mortgagor, but remains in force as a protection to the mortgagee alone, the insurer, upon paying the mortgage, is entitled to subrogation. Without exception the adjudicated cases noted in the plaintiff's brief rest upon a separate contract between the mortgagee and the insurer, or the insurance was paid for by the mortgagee, or the policy was assigned to him, and hence became his property the same as though originally made to him. In *Carpenter* v. *Providence etc. Ins. Co.,* 16 Pet. 495, 502 (10 L. Ed. 1044), cited by plaintiff, Mr. Justice Story says:

"If, then, a mortgagor procures a policy on the property against fire, and he afterward assigns the policy to the mortgagee * * as collateral security, that assignment operates solely as an equitable transfer of the policy, so as to enable the mortgagee to recover the amount due, in case of loss; but it does not displace the interest of the mortgagor in the premises insured. On the contrary, the insurance is still his insurance, and on his property, and for his account."

There are respectable precedents holding that the stipulation must be indorsed upon or appended to the policy, stating the manner in which the conditions of the instrument will apply to a mortgagee to whom loss is payable, if his right to receive payment is to be in any wise limited by the restrictions imposed upon the insured: *Boyd* v. *Thuringia Ins. Co.*, 25 Wash 447. (65 Pac. 785, 55 L. R. A. 165). This seems to be the theory upon which the bank recovered, and Ramsey did not, in their joint action upon the policy. Under this construction of the insurance agreement the company contracted with Ramsey to pay the bank in case of loss as its interest might appear absolutely and without reference to its violation of other terms of the policy. Hence in paying the loss to the bank the company was fulfilling its stipulation with Ramsey. It was complying with that part of its engagement with him which remained impossible of rescission, although he violated other portions thereof already mentioned. The company is before us contending that it has a right to enforce subrogation against Ramsey as an incident of a contract with him under which it says he has no rights. It maintains it was compelled to pay because of the terms of the policy. That feature, however, was a condition favorable to Ramsey, which was not affected by his selling the property. That much of the benefit for which he contracted remained unimpaired. The fallacy of the plaintiff's argument consists in assuming that Ramsey forfeited all his rights, when in truth there remained the one compelling the plaintiff to pay the bank in case of loss.

This action proceeds on the hypothesis that the plaintiff was obliged to pay; but, even so, it was because of its covenant with Ramsey for which he had paid a

premium of $60. The payment of the loss was a compliance with the company's engagement to Ramsey, with whom it contracted, but for which no liability of the company would have accrued. The result is not different as to Ramsey's liability in this action, if his sale of the property worked an utter avoidance of the policy in all its terms. There are cases giving such construction to similar policies on the ground that, as the mortgagee must claim under a contract made for his benefit, he cannot occupy a better position than the one who made the contract; that the creditor must take the insurance agreement with its burdens, as well as with its benefits; and that if the maker of the contract, the mortgagor, cannot recover directly, neither can one who claims under him: *Delaware Ins. Co.* v. *Greer,* 120 Fed. 916 (57 C. C. A. 188, 61 L. R. A. 137) ; *Brecht* v. *Law Union & Crown Ins. Co.,* 160 Fed. 399 (87 C. C. A. 351, 18 L. R. A. (N. S.) 197), and note. However this may be, yet if such a meaning should be given to the policy, the company, being exonerated from payment by Ramsey's breach of the contract, was not bound to pay anything, so that its disbursement was voluntary, and not recoverable.

The decree of the Circuit Court is affirmed.

                                          AFFIRMED.


MR. CHIEF JUSTICE MOORE and MR. JUSTICE MCBRIDE concur.

MR. JUSTICE BEAN concurs in the result.