HENRY B. COLLINS, et al. v. MICHIGAN COMMERCIAL UNDERWRITERS, Agency of Michigan.

and

HENRY B. COLLINS, et al. v. GLENS FALLS INSURANCE CO. of Glens Falls, N. Y.

Eastern Section.    March 19, 1928.

No petition for Certiorari was filed.

1. **Insurance.** Where a part of the house insured rests upon ground that does not belong to insured, policy held void.
   In an action to recover on an insurance policy where the policy provided it would be void "if the subject of insurance be a building on ground not owned by the insured in fee simple" and the evidence showed that the insured had through mistake built his house partly on the lot of another, held that the above condition was breached and the insured could not recover.

2. **Fixtures.** Where a house is built upon the land of another it becomes a fixture and cannot be removed.
   In an action to recover on an insurance policy where it was shown that the insured's house had been built partly on the lot of another and the

insurance company sought to avoid the policy on the ground that the house did not belong to the insured, held that under the rule in Tennessee that part of the house which had been built on the others lot had become attached to and was a part of said lot and that part of the house was not conveyed by a deed of trust.

3. **Insurance. Beneficiary in a deed of trust cannot recover for a part of a house resting upon the land of another.**
Where the insured through error built his house partly on land of another and later gave a deed of trust on it, held that the holders of the note could not recover on the insurance policy to the extent of the value of the house that rested on the other's land.

4. **Insurance. Contracts evidenced by the mortgage clause are separate and distinct contracts from the one with the mortgagor.**
The contract of an insurance company with mortgagee evidenced by the mortgage clause is separate and distinct from the one with the owner.

5. **Insurance. Mortgagee entitled to recover on insurance policy to extent of land owned by insured.**
Where insured had through mistake placed his house partly on the lot of another and had then given a deed of trust and a mortgage clause had been placed on the insurance policy, held that the mortgagee might recover on the policy although the owner could not, for there had been no change of ownership or increase of hazard after the mortgage was given.

6. **Insurance. Mortgagee held entitled to recover proportional part of the full value of the policy rather than of the amount of his mortgage.**
Where insurance policies were issued in the amount of $2,600 on a house which rested partly on the land of another, held that the mortgagee might under its mortgage clause recover the proportional part of the value of the house that actually rested on the land of the owner, and that the house for such purposes, should be valued at $2,600 instead of the amount of the mortgage.

Appeal from Chancery Court, Hamilton County; Hon. W. B. Garvin, Chancellor.

Affirmed and remanded.

Chas. S. Coffey, of Chattanooga, for Henry B. Collins.

G. B. Murray, of Chattanooga, for Michigan Commercial Underwriters Agency.

C. S. Littleton and J. L. Spurlock, of Chattanooga, for Glens Falls Ins. Co.

THOMPSON, J. The complainants, Henry B. Collins and wife, Ella Collins, Chattanooga Savings Bank and T. R. Durham, the latter two being first and second mortgagees, respectively, sued the Michigan Commercial Underwriters Agency, an insurance company, to recover the sum of $1,000, face value, and interest and statutory penalty, upon a fire insurance policy covering a house which was totally destroyed by fire. The same complainants sued the defendant, Glens Falls Insurance Company, upon a similar policy on the same house, the latter suit seeking to recover the sum of $1,600, face value, with interest and statutory penalty. The two causes were consolidated and tried together. The Chancellor held that the complainants, Collins and wife, owners and mortgagors, were not entitled to recover upon

6 T. A.—34.

the policies, but that the complainants, Chattanooga Saving Bank and T. R. Durham, first and second mortgagees, were entitled to recover under the mortgage clauses upon a pro rata basis to be hereinafter set out. All of the complainants and both defendants have appealed and assigned errors.

The facts and holdings of the lower court are in substance as follows:

Avenue "G" in LeClercq's Addition to East Lake, a suburb of Chattanooga, Tennessee, extends north and south and is intersected at right angles by 31st street which extends east and west. Lot "C" fronts on the east side of Avenue "G," and is bounded on the north side by 31st street. The lot next to and south of Lot "C" is Lot No. 8, and the lot next to and south of Lot No. 8 is Lot No. 7. Collins and wife owned Lot "C" and Lot No. 8, and one Joe White owned Lot No. 7. It was thought that there was an off-set in 31st street, and a Mr. Nichelson, who built the first house that was built in the block, placed it upon the wrong lot. The next one to build was the said Joe White, owner of Lot No. 7, who by reason of the same misunderstanding about the off-set in 31st street placed his house on the lot next to and south of Lot No. 7, that is, all but about two inches. Then Collins undertook to build two houses, one on Lot "C," and the other on Lot No. 8. Thinking that the Nichelson and White houses had been properly placed, he made the mistake of placing the house, which he intended to place on Lot "C," on the line between Lot "C," and Lot No. 8, and the further mistake of placing the house, which he intended to place on Lot No. 8, on the line between Lot No. 8 and Lot No. 7. This last-mentioned house was twenty-six feet wide and the south ten or twelve feet of it was on Lot No. 7. It is the one involved in these suits, and is known as No. 3102, Avenue "G." Collins finished the construction of the two houses in August or the early part of September, 1923, without discovering his error in placing them.

On September 10, 1923, Collins and wife took out a policy of fire insurance with the defendant Glens Falls Ins. Co. insuring in the amount of $1,600, and for a period of three years, the house thought to be wholly upon Lot No. 8, the policy however describing the location of the house merely as "3102 Avenue G, East Lake, a suburb of Chattanooga."

Then they borrowed $1600 from the Chattanooga Saving Bank and secured it by a deed of trust on Lot No. 8. It was of course thought by Collins and wife and the bank that the house was wholly upon Lot. No. 8, and it was of course the intention that the house as well as the lot should be conveyed. However, the description in the deed of trust simply described the lot without mentioning the house. This loan was made and the deed of trust was executed on September 21, 1923. An insurable value clause, stipulating that

the insurable value of the house was $2,600, was attached to the policy, and on September 22, 1923, a mortgage clause, stating that the loss or damage, if any, under the policy should be payable to the Chattanooga Savings Bank, etc., as its interest might appear, was attached to the policy and the same was delivered to the said bank along with the deed of trust.

On November 17, 1923, Collins and wife borrowed $1,200 from Mr. T. R. Durham. Mr. Durham made this loan to them himself, but he was the vice-president of the Chattanooga Savings Bank and had handled the making of the bank's $1,600, loan above mentioned. Mr. Durham's loan was presented or evidenced by two notes each in the sum of $600, but payable in $20 monthly installments. The deed of trust securing the two notes conveyed Lot "C" and Lot No. 8 but described them without mentioning the houses, although Mr. Durham and Collins and wife all thought that one of the houses rested wholly upon Lot "C" and the other wholly upon Lot No. 8. Lot No. 8 was of course conveyed subject to the bank's prior deed of trust. The deed of trust securing Mr. Durham stated that note No. 1, rested on Lot "C," and that Note No. 2 rested on Lot No. 8.

After this $1,200 loan had been made, Mr. Durham told Collins that he thought that Collins should take out another policy of insurance with mortgage clause payable to him so that he would have ample security on his loan. So, Collins requested the local agent of the defendant, Michigan Commercial Underwriters Agency, to issue a policy upon the said house thought to be wholly upon Lot No. 8. The agent issued the policy in the sum of $1,000, on December 15, 1923. It was to run for a period of one year. A $2,600, insurable value clause was attached to said policy, as was a mortgage clause providing that the loss or damage, if any, should be paid first to the Chattanooga Savings Bank, and second to T. R. Durham, etc., as their interests might appear. The policy with the clauses attached was delivered to Mr. Durham.

About the first of January, 1924, Collins learned that the houses had been misplaced upon the lots, and between January 1 and 15, 1924, he so notified Mr. Durham. But neither Collins and wife, the bank nor Mr. Durham notified the insurance companies or their agents, and they did not learn of the misplacement of the houses until after the fire.

When Collins first learned of the misplacement he began negotiating with Joe White for the purchase of Lot No. 7, but they were unable to agree upon a price and Collins entered into a contract with a man to move both of his houses so as to place them upon the lots as originally intended. He notified the tenants to whom he had rented the houses to move out, and they did move just a few days prior to the fire which occurred on the night of March 5, 1924, and

which destroyed the house on Lot No. 8, but which extended over ten or twelve feet onto Lot No. 7.

As stated, the Chancellor held that the policies were voided as to Collins and wife and that they could not recover, but he held that the bank and Durham were entitled to recover upon the mortgage clauses to the extent of the value of that part of the house (north fifteen feet thereof) which rested upon Lot No. 8, said value to be determined upon the basis of a value of $2,600, for the entire house. He ordered a reference but permitted the parties to appeal.

For Collins and wife it is insisted that the policies were not voided as to them and that the Chancellor erred in holding that they were not entitled to recover. For the bank and Durham it is insisted that they were entitled to recover the value of the entire house and that the Chancellor erred in limiting their recovery to the value of that part of the house which rested upon Lot No. 8, said value to be determined upon the basis of a value of $2600 for the entire house. Both Collins and wife and the bank and Durham also insist that the Chancellor erred in declining to allow the statutory penalty.

For the insurance companies it is insisted that the Chancellor erred in allowing the bank and Durham any recovery whatever, but that even if they were entitled to recover, the same should have been based upon a total valuation of $2,200, (the amount of their loans) instead of a total valuation of $2,600, as held by the Chancellor.

For Collins and wife and for the bank and Durham it is insisted that that part of the house which had rested upon Lot No. 7, had not become attached thereto and a part thereof, but that Collins and wife had owned said house and had had the right to remove it. Collins and wife, therefore, insist that they had an insurable interest in the entire house and that the policy was not voided as to them. The bank and Durham further insist upon the same reasoning that as to them the insurance covered the entire house (whether or not it was voided as to Collins and wife) and that the fact that it was partly on a lot not owned by Collins and wife did not authorize the Chancellor to limit their recovery to the value of that part which had rested on Lot No. 8. Counsel for complainants cite cases from other States which seem to hold that under the facts and circumstances presented in this record Collins and wife owned all of the house, and did have the right to remove it from White's lot. In fact, the record shows that Collins and wife had arranged to remove the house and that White did not object. But counsel for complainants cite no Tennessee case holding that Collins and wife owned all of the house and had the right of removal, and as we understand the rule in this State, that part of the house which rested on Lot No. 7, did become a part of said lot and the law did not give them the right of removal. Degraffenreid v. Scruggs, 23 Tenn., 451; Annotations to Shannon's Code, section 5009.

But aside from this, the policies provided;

"This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof; or if the interest of the insured in the property be not truly stated herein; or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after loss."

"This entire policy unless otherwise provided by agreement endorsed hereon or added hereto shall be void (a) if the interest of the insured be other than unconditional and sole ownership; or (b) if the subject of insurance be a building on ground not owned by the insured in fee simple."

Under these provisions the policies were voided as to Collins and wife, particularly as they knew of the misplacement of the house for a period of more than sixty days before the fire and did not notify the insurance companies. Certainly the fact that the entire side of the house from front to back was ten or twelve feet over on Lot No. 7 was material and increased the risk as a matter of law, and as pointed out by the Chancellor, Collins himself testified that he knew that the defendants would not have insured the house had they known that it was ten or twelve feet over and onto Lot No. 7. We, therefore, do not think that the Chancellor erred in denying the right of Collins and wife to recover on the policies.

Neither do we think he erred in limiting the recovery of the bank and Durham to the value of that part of the house which had been located upon Lot No. 8. Even had the entire house belonged to Collins and wife and they had had the right to remove it, it would not necessarily have followed that the part which had been located upon Lot No. 7, had been conveyed by the trust deeds which purported to convey only Lot No. 8, and did not mention the house. That part which had been on Lot No. 7, had certainly not become attached to and a part of Lot No. 8, at the time the trust deeds were executed, and there is no effort to reform the deeds of trust, etc. But however this may be, under the rule in Tennessee that part of the house which had been on Lot No. 7, had become attached to and a part of said lot and neither the bank nor Mr. Durham acquired any interest in it under their deeds of trust. We, therefore do not think the Chancellor erred in limiting their recovery to the value of that part of the house which had been located on Lot No. 8.

We are also of the opinion that the Chancellor did not err in declining to allow the statutory penalties. It seems to us that it is clear from the record that the insurance companies were acting in good faith in declining to pay, and that to have allowed the penalties would have been a gross injustice to them.

For the foregoing reasons the assignments of error in behalf of Collins and wife, the bank and Durham are overruled and disallowed.

As stated, the insurance companies insist that the policies being voided as to Collins and wife, it was error to allow the mortgagees, the bank and Durham, to recover. The mortgage clauses were in all respects similar except that the latter one made the loss payable first to the bank, and second to Durham. The one attached to the first policy is here quoted from as follows.

"Loss or damage, if any, under this policy shall be payable to the Chattanooga Savings Bank as mortgagee or as agent for its assigns or beneficiary, as interest may appear, and this insurance, as to the interest of the mortgagee (or agent) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or any proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; Provided, that in case the mortgagor or owner, after demand, shall refuse or neglect to pay any premium due under this policy, the mortgagee (or agent) shall on demand pay the same.

"Provided, also, that the mortgagee (or agent) shall notify this company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee or agent and, unless permitted by this policy, it shall be noted thereon, and if, after demand, in writing, the mortgagor or owner shall refuse or neglect to pay the premium for such increased hazard for the term of the use thereof, the mortgagee (or agent) shall pay the same on demand, in writing, otherwise this policy shall be null and void.

"This company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit of the mortgagee (or agent) for ten days after notice, in writing, to the mortgagee (or agent) of such cancellation and shall then cease, and this company shall have the right, on like notice, to cancel this agreement.

"In case of any other insurance upon the within described property this company shall not be liable under this policy for a greater proportion of any loss or damage sustained than the sum hereby insured bears to the whole amount of insurance on said property, issued to or held by any party or parties having an insurable interest therein, whether as owner, mortgagee or otherwise.

"Whenever this company shall pay the mortgagee (or agent) any sum for loss or damage under this policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, this company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made,

under all securities held as collateral to the mortgage debt, or may at its option pay to the mortgagee (or agent) the whole principal due or to grow due on the mortgage, with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities, but no subrogation shall impair the right of the mortgagee (or agent) to recover the full amount of its claim.

"The foregoing provisions and agreements shall take precedence over any provision or condition conflicting therewith contained in said policy."

It seems to us that the holding of the Supreme Court in Laurenzi v. Ins. Co., 131 Tenn., 644, 176 S. W., 1022, that the contracts evidenced by the mortgage clauses were separate and distinct ones with the mortgagees, designed for their protection, and in operation from the dates of their execution, unaffected by any act or neglect of the mortgagors either prior or subsequent to the execution of said mortgage contracts, disposes of the contention of the insurance companies in the case at bar that because the policies were void as to the mortgagors, Collins and wife, they were likewise void as to the mortgagees, the bank and Durham.

But it is insisted for the insurance companies that the failure of the bank and Mr. Durham to notify them of the misplacement of the house defeated their right to recover under that provision of the mortgage clause which required them to notify said companies "of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagees or agents," etc. But there had been no change of ownership or increase of hazard. The ownership and hazard remained just as they were at the time of the issuance of the policies and mortgage clauses. Neither the bank nor Durham had any knowledge of the misplacement at the time that the policies were issued or at the time of the executions of the mortgage clauses. And when Collins did tell them of the misplacement he did not advise them of its full extent, and it does not appear that they were aware of the fact that Collins and wife had failed to notify the companies. Since neither the bank nor Durham acted in bad faith, and since there was no change of occupancy or increase of hazard, we do not think the Chancellor erred in enforcing the mortgage clause in favor of the bank and Durham.

Neither do we think he erred in his method of computing their losses and arriving at the amount which they were entitled to recover. Each policy had a $2,600 insurable value clause attached to it, and these clauses fixed the value of the entire house at $2,600, regardless of the evidence introduced by the defendants tending to show that it was not in fact worth that much. Both the bank and Durham had an interest in that part of the house which had been located on Lot No. 8, and the total extent of their combined interests was $2,200,

the amount of their loans. The Chancellor therefore could do nothing but fix the value of the entire house at $2,600, and order that the value of that part of the house which was located upon Lot No. 8, be computed accordingly.

It results that in our opinion there was no error in the decree of the lower court and the same will be affirmed and the cause remanded for the purpose of carrying said decree into effect. The costs of the appeal will be taxed one-half against the complainants and one-half against the defendants.

Portrum and Snodgrass, JJ., concur.