Argued and submitted May 15, affirmed on appeal and cross-appeal
September 18, 1985

## SCOTT et al,
*Respondents - Cross-Appellants,*

*v.*

## NORTHWESTERN AGENCIES, INC.,
*Appellant - Cross-Respondent.*

(A8108-04839; CA A31450)

706 P2d 195

Lee Aronson, Portland, argued the cause for appellant - cross-respondent. With him on the briefs were John Folawn and Holmes, DeFrancq & Schulte, Portland.

Levi J. Smith, Portland, argued the cause and filed the brief for respondents - cross-appellants.

Before Gillette, Presiding Judge, and Van Hoomissen and Newman, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

This is an action against an insurance agent for negligently failing to notify plaintiffs that insurance on a truck would not be renewed and for not procuring other insurance on expiration of plaintiffs' policy. Defendant appeals a judgment on a jury verdict for plaintiffs, assigning as error the trial judge's instruction to the jury regarding the appropriate measure of damages. Plaintiffs cross-appeal from the trial court's refusal to award prejudgment interest. We affirm on the appeal and on the cross-appeal.

Plaintiffs operated a trucking concern based in Arizona. Their truck was insured against fire, theft and collision loss by Lloyds of London; the policy was procured through defendant, an Oregon insurance agent. On June 7, 1979, Lloyds' United States representative notified defendant that plaintiffs' insurance would not be renewed on its expiration on August 16, 1979. No notice was given to plaintiffs that their policy would not be renewed.

Two days after the expiration of the policy plaintiffs' truck was destroyed in a single vehicle accident.[1] The insurer denied liability under the lapsed policy. Plaintiffs then brought an action in Arizona against defendant, Lloyds and Great Western Bank, which held a lien on the wrecked truck. Defendant was dismissed from that action for lack of personal jurisdiction.

The insurance policy contained a loss payable endorsement which provided extended coverage to the lien holder for 10 days following the expiration of the policy. Plaintiffs' objective in the Arizona action was to get Lloyds at least to pay Great Western the amount of its lien, which at the time of the loss was $19,876. Lloyds counterclaimed against plaintiffs, relying on a subrogation clause in the policy.[2] The

---

[1] The value of the truck before the accident was $27,000. Salvage value of the wreckage was $3,000.

[2] Both parties referred to section 6 of the loss payable endorsement, which reads:

"6. Whenever this Company shall pay to the Lien-Holder any sum for loss or damage under this policy and shall claim that as to the insured no liability therefor exists, this Company at its option, may pay to the Lien-Holder the whole principal sum and interest due or to become due from the insured on the obligation secured by the property insured under this policy (with refund of all interest not accrued), and this Company shall thereupon receive a full assignment

clause, while disclaiming any liability under the policy to the insured mortgagor, gave Lloyds the right to be subrogated to the mortgagee's position *vis-a-vis* the mortgagor, when Lloyds paid the mortgagee's interest.

During the course of events, Great Western Bank exercised its self-help collection rights against plaintiffs, seizing their bank account after the truck loan went into default. The bank also obtained a judgment in a separate action against plaintiffs for the remaining loan balance of $8,200—the amount remaining in arrears after the bank account was credited against the debt—plus $1,500 for attorney fees.

A prejudgment settlement was eventually reached in the Arizona action, by which Lloyds agreed to pay the bank's $8,200 judgment (but not the attorney fee award) and to forego its subrogation claim. Lloyds received the $3,000 salvage value for the truck. After accounting for all of their incidental costs of recovery, plaintiffs ultimately received a $1,000 net benefit from Lloyds. Plaintiffs then brought the present action against defendant.

Defendant argues that the trial judge erred in instructing the jury that the measure of damages should have been the differences between the fair market value of the truck before and after the accident, less the *net amount recovered* from any source on account of the accident. Defendant argues that the court should instead have given its requested damage instruction, which would have measured damages by the before and after fair market value of the truck, less the amount of any insurance which covered the damage. Under this approach, defendant claims that $19,876 should have been deducted from plaintiffs' damages because of the loss

---

and transfer, without recourse, of said obligation and the security held as collateral thereto; but no subrogation shall impair the rights of the Lien-Holder to recover the full amount of its claim."

We also refer to the insurer's subrogation clause found on the reverse of the loss payable endorsement, which reads in part:

"Whenever the Underwriters shall pay the Mortgagees [or trustee] any sum for loss or damage under this policy and shall claim that, as to the Mortgagor owner, no liability therefore existed, the Underwriter shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all evidence of such indebtedness and all mortgages and collateral securing the same * * *."

payable endorsement clause extending coverage to the lien-holder for the amount of the lien 10 days beyond the policy expiration date, despite the fact that plaintiffs ultimately received only $1,000 net benefit from the insurer.

At the heart of defendant's argument is the notion that plaintiffs were in fact insured for the amount of the lien and Lloyds wrongfully withheld payment under the policy. Defendant's conclusion is that it was Lloyds' misbehavior which caused plaintiffs' damages and that, as an insurance agent, defendant should not be considered an insurer of the underwriter's performance. Plaintiffs' counter-argument is that the subrogation clause in the policy left plaintiffs unprotected, whether Lloyds timely paid the bank or not, and that their damages were therefore a natural consequence of defendant's own negligence. In other words, even if Lloyds had immediately paid the bank under the terms of the loss payable endorsement, plaintiffs argue that they still would owe the lien amount, payable to Lloyds by way of subrogation.

■ Plaintiffs are correct. The policy had expired by its own terms, with coverage extended to the lienholder for 10 days under the grace period clause.[3] Still, as to the loss of the named insureds—plaintiffs, Lloyds was not liable because the policy was not in force for plaintiffs' benefit at the time of the loss. Thus, the subrogation clause, which requires that there be no liability from Lloyds to the insured for its operation, applied upon Lloyds' paying the loss to the mortgagee.

■ Defendant suggests that the 10-day grace period clause was part of plaintiffs' bargain with Lloyds in consideration for the premium that was paid and inured to plaintiffs' benefit. This reasoning leads, however, to the awkward conclusion that a party procuring insurance for an encumbered property obtains one year and 10 days of insurance, while one

---

[3] The 10-day grace period clause reads:

"7. The coverage granted under this policy shall continue in full force and effect as to the interest of the Lien-Holder only for a period of ten (10) days after expiration of said policy unless an acceptable policy in renewal thereof with loss thereunder payable to the Lien-Holder in accordance with the terms of this Automobile Loss Payable Endorsement shall have been issued by some insurance company and accepted by the Lien-Holder. In the event of a loss not otherwise covered during the extended ten (10) day period herein referred to, an annual policy covering the same hazards to the property insured under the original policy shall be issued and accepted by the Lien-Holder and Mortgagor."

insuring debt free property receives only one year insurance coverage, all for the same premium. The better construction of the 10-day grace period is that it, like the standard mortgage clause, is for the benefit of the mortgagee. *See Montgomery v. First National Bank,* 265 Or 49, 67, 507 P2d 1145 (1973); *Meader v. Far. Mut. Fire Relief Ass'n,* 137 Or 111, 1 P2d 138 (1931); 5A Appleman, *Insurance Law and Practice* 279, § 3401 (1970).

■ In *Meader v. Far. Mut. Fire Relief Ass'n, supra,* 137 Or at 111, the court recognized that a standard mortgage clause in effect creates a separate contractual relationship between the insurer and the mortgagee. *See Bennett Motor Co. v. Lyon,* 14 Utah 2d 161, 380 P2d 69 (1963); *but see Ambrust v. Travelers Insurance Co.,* 232 Or 617, 376 P2d 669 (1962) (in which the loss payable endorsement apparently did not contain a standard mortgage clause); *see, generally,* Keeton, *Insurance Law* 187, § 4.2(b) (1971). We view the 10-day grace period clause for the mortgagee as analogous to the standard mortgage clause. Lloyds' obligation, after the expiration of the policy, was to the lienholder for the debt owed and not to plaintiffs for their loss. *Milwaukee Mechanics Ins. Co. v. Ramsey,* 76 Or 570, 149 P 542 (1915). Under the express terms of the policy, Lloyds could rightfully claim subrogation to the bank's position against plaintiffs on the debt.[4]

■ Plaintiffs' decision to settle the Arizona lawsuit with Lloyds was, given the foregoing analysis, understandable. There is no reason to assume that an Arizona court would have taken a different view. *See Brogoitti v. Walter,* 43 Ariz 290, 30 P2d 835 (1934). Lloyds did no less than honor the express provisions of its insurance policy. Plaintiffs' damages were correctly attributed to defendant's negligence; the policy cannot serve to shield defendant from liability. The trial court's instructions were correct.

■■ On cross-appeal, plaintiffs argue that the trial court erred in denying them prejudgment interest. Prejudgment interest can be awarded only when " 'the demand is of such nature that its exact pecuniary amount was either ascertained,

---

[4] The cases relied on by defendant, *Milwaukee Mechanics Ins. Co. v. Ramsey,* 76 Or 570, 149 P 542 (1915), and *United States National Bk. of Or. v. American Home A. Co.,* 505 F2d 742 (CA 9th 1974), are distinguishable by reason of the lack of an express subrogation clause in the policies in issue.

or ascertainable by simple computation * * *.' " *Public Market Co. v. Portland,* 171 Or 522, 625, 130 P2d 624, 138 P2d 916 (1943) (*quoting* 1 Sedgwick, *Damages* (9th ed) 571, § 300). Damages attributable to defendant could not have been known until the conclusion of the Arizona lawsuit—an outcome neither "ascertained, [n]or ascertainable" in advance. Under the circumstances, we hold that the conditions necessary for an award of prejudgment interest were not met.

Affirmed on the appeal and on the cross-appeal.