**CHRYSLER CREDIT CORPORATION,**
**Plaintiff/Appellant,**

v.

**Milburn G. NOLES, and wife, Marjorie S. Noles, Defendants/Appellees.**

Court of Appeals of Tennessee,
Western Section, at Jackson.

Sept. 26, 1990.

Permission to Appeal Denied by
Supreme Court Dec. 10, 1990.

Laurie Lea Doty, Trotter & Doty, Huntingdon, for plaintiff/appellant.

John Everett Williams, Williams & Williams, Huntingdon, for defendants/appellees.

HIGHERS, Judge.

This case presents the issue of whether Tennessee Farmers Insurance Company (hereinafter "appellant") has a right of subrogation against the appellees, Milburn and

Marjorie Noles.[1] The Chancery Court at Carroll County held that appellant was entitled to no such right.

The facts in this case are not in dispute; rather, the case turns upon the interpretation of those facts in conjunction with the controlling law. With the sole question being one of law, this Court reviews the record *de novo* without a presumption that the judgment of the trial court is correct. *General Elec. Credit Corp. of Tenn. v. Kelly & Dearing Aviation,* 765 S.W.2d 750 (Tenn.App.1988). With this in mind, we summarize the facts as follows.

On June 25, 1986, appellees purchased a Dodge Ram Charger and executed a retail installment contract with Chrysler Credit Corporation for the financing of the vehicle in the amount of $13,508.56. Appellee, Milburn Noles, then obtained a policy of automobile insurance from appellant which provided coverage for damage to the vehicle. Chrysler Credit Corporation, the lienholder, was named as Mortgagee/Loss Payee on the insurance policy.

The renewal date for the insurance policy was May 19, 1987 and appellee, Milburn Noles, was offered an opportunity to renew the insurance for an additional six month period. The policy was not renewed prior to May 19, 1987, however Noles was offered another opportunity to reinstate the policy with continuous coverage by paying the premium due on or before June 2, 1987, but he did not pay the premium. Thus, the policy indisputably lapsed.

The insurance policy contained a loss payable clause which, among other things, required appellant to give at least ten days notice to the lienholder prior to the cancellation of the lienholder's protection.[2] Pursuant to the policy, appellant advised Chrysler Credit that as lienholder, it was covered for damage to the vehicle for ten days from the date of notification, that being through June 15, 1987. On June 9, 1987, the automobile in question was involved in an accident leaving it in such a condition that its value was limited to that which could be obtained for salvage.

Subsequent to the accident, Chrysler Credit made a claim with appellant for the value of the vehicle in accordance with its rights under the loss payable clause contained in the policy. Appellant satisfied the claim by paying to Chrysler Credit $11,472.99. The automobile was then sold as salvage for which appellant received $1,295.00. Crediting the $1,295.00 against the amount paid to Chrysler Credit, appellant paid a net of $10,177.99 on Chrysler Credit's claim. At the conclusion of these transactions, Chrysler Credit, by and through its agent, executed an assignment assigning all of its interest in the retail installment contract to appellant.

Appellant contends that there are two reasons that it should be legally entitled to recover from appellees the $10,177.99 that it paid to Chrysler Credit: first, by virtue of a subrogation agreement in the loss payable clause and second, because of the fact that Chrysler Credit assigned its interest in the retail installment contract executed by the appellees. We believe that our opinion with respect to appellant's subrogation issue is dispositive and we therefore do not address appellant's argument regarding assignment.

It is evident from various authorities on the matter, that there are essentially two types of loss payable clauses in insurance policies whereby a lienholder's interest in property is protected should a loss occur. The type involved in the present case is generally referred to as a "standard" loss

---

1. This case was originally styled in the name of Chrysler Credit Corporation. Tennessee Farmers was substituted as party plaintiff, and Chrysler Credit is no longer a party.

2. The loss payable clause stated in part:
   The Company by its contract of insurance reserves the right to cancel such policy at anytime as provided by its terms and may cancel this policy by written notice addressed to the lienholder named in the Loss Payable Clause, and mailed to the address shown therein, stating when not less than ten (10) days thereafter, cancellation shall be effective as to the interest of said lienholder, and terminate any rights under said contract of insurance or Loss Payable Clause as to said lienholder.

payable clause and is distinguishable from a "simple" loss payable clause. See 10A Couch on Insurance 2nd (Rev.Ed.1982) § 42:683 and 5A Appleman, Insurance Law and Practice § 3401 (1970). The primary importance of the distinction is that the standard clause provides a separate and distinct contract between the insurer and the lienholder. This concept is clearly stated in 10A Couch on Insurance 2d (Rev.Ed. 1982) § 42:728

Under the standard or union mortgage clause, an independent or separate contract or undertaking exists between the mortgagee and the insurer, which contract is measured by the terms of the mortgage clause itself. There are accordingly in substance two contracts of insurance, the one with the mortgagee, and the other with the mortgagor. The mortgagee does not have the status of a beneficiary, and the effect is the same as though the mortgagee had procured a separate policy naming himself as the insured.

The consideration of the insurer's undertaking with respect to the mortgagee under the standard clause is the consideration for which the policy was itself issued to the mortgagor, and a standard mortgage clause creates a separate contract between the insurer and the mortgagee, and is enforceable by the mortgagee, even though it is merely engrafted onto the policy delivered to the mortgagor.

Both parties agree that this is a standard loss payable clause and, as such, Chrysler Credit had a separate and distinct contract with appellant. Tennessee case law supports this concept. The pertinent part of the loss payable clause is as follows.

Loss or damage, if any, under the policy shall be payable as interest may appear to the Lienholder named as Loss Payee in the Declarations and this insurance as

to the interest of the ... Mortgagee or other secured party (herein called the lienholder) shall not be invalidated by any act or neglect of the ... mortgagor.

Similar loss payable clauses can be found in *Laurenzi v. Atlas Ins. Co.*, 131 Tenn. 644, 176 S.W. 1022 (1915) and *Collins v. Michigan Comm. Underwriters*, 6 Tenn. App. 528 (1928). The courts in both of those cases found the clause in question to be a standard loss payable clause therefore creating a separate and distinct contract designed for the mortgagee's protection. *Laurenzi* at 1024; *Collins* at 535; see also *Phoenix Mut. Life Ins. Co. v. Aetna Ins. Co.*, 166 Tenn. 126, 59 S.W.2d 517 (1933); *General Elec. Credit Corp. of Tenn. v. Kelly & Dearing Aviation*, 765 S.W.2d 750 (Tenn.App.1988).

Although appellees agree that a separate and distinct contract exists in the present case as in *Laurenzi* and *Collins,* they correctly point out that those cases do not involve the question of the insurer's right to subrogation and therefore, they are not controlling.[3] It is important, however, to establish this principle before going further with this issue. Since Chrysler Credit's rights under the loss payable provision could not be affected by the appellee's neglect, it is clear that even after appellees allowed the policy to lapse, Chrysler Credit still had the remedy provided. Having determined that appellant acted properly by paying Chrysler Credit, it is appropriate to examine the loss payable clause further to determine appellant's rights after making such a remuneration.

The loss payable clause contained the following paragraph which is really at the heart of this appeal.

*Whenever the company shall pay the Lienholder any sum for loss or damage under such policy and shall claim that, as to the lessee, Mortgagor, Owner or other Debtor, no liability therefor exist-*

---

3. We point out another distinction not addressed by the parties. The *Laurenzi* and *Collins* cases involved real property whereas the present case is one involving personal property. There is authority, however, for applying the standard mortgage clause to chattel mortgages. 10A Couch on Insurance 2d (Rev.Ed.1982)

§ 42:724. For cases involving automobile insurance see *Savings Society Comm. Bank v. Michigan Mut. Liab. Co.,* 118 Ohio App. 297, 194 N.E.2d 435 (1963) and *Scott v. Northwest Agencies,* 75 Or.App. 187, 706 P.2d 195 (1985). See also *General Elec. Credit Corp. of Tenn. v. Kelly & Dearing Aviation* at 753.

*ed, the company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made,* under all securities held as collateral to the debt, or may at its option, pay to the Lienholder the whole principal due or to grow due on the mortgage or other security agreement with interest, and shall thereupon receive a full assignment and transfer of the mortgage or other security agreement and of all such other securities; but no subrogation shall impair the right to the Lienholder to recover the full amount of its claim. (Emphasis added).

The Chancellor held that this subrogation agreement did not apply in the present case for two reasons. The first reason given by the Chancellor is reflected in the following quote from his memorandum opinion. After setting forth the provision as we have done above, the Chancellor stated:

From the evidence presented in this case, it does not appear that the insurance company, having paid the lienholder, claims that the mortgagor (Noles) had no liability for the damage covered under the policy. There was no evidence adduced as to the cause of the damage to the Noles' vehicle.

We respectfully believe that the Chancellor misinterpreted the provision. By holding that appellants had no right to subrogation because the mortgagor (appellees) apparently had "no liability for the damage covered" improperly places the focus on appellees' liability for the damaged vehicle. The subrogation clause does not contemplate such an analysis. The Chancellor misconstrued the meaning of the phrase, "no liability therefore existed." Our reading of the phrase, which is consistent with other cases, is that where *appellant has no liability* for the payment of the claim to appellees, appellant may pay the lienholder and then be legally subrogated to the extent of such payment. See 16 Couch on Insurance 2d (Rev.Ed.1983) §§ 61:369–370; 10A Couch on Insurance 2d (Rev.Ed.1982) § 42:716; 6A Appleman, Insurance Law and Practice, § 4072 (1972). In accordance with our interpretation, section 61:369 in Couch provides:

Many policies of insurance upon property contain the so-called union or standard mortgage clause, by which the loss is made payable to the mortgagee as his interest may appear, and it is provided that, as between the insurer and the mortgagor or owner, the insurer, upon payment of a loss to the mortgagee, *and if it shall claim that no liability exists as to the mortgagor,* shall be subrogated to the mortgagee's right of recovery and claim against the mortgagor. Such a provision is valid, and establishes the right of the insurer to subrogation where the conditions of the clause, payment to the mortgagee and denial of liability as to the mortgagor, are satisfied.

(Emphasis supplied). The phrase in question clearly applies to the situation presented by this case. The mortgagors, appellees, allowed their insurance to lapse. Thus, appellant has no liability for the payment of a claim as to appellees. Consequently, appellant was authorized under its "separate" contract it had with Chrysler Credit to reimburse Chrysler Credit for its loss and, according to the terms of the subrogation provision, be subrogated to Chrysler Credit's rights.

The second reason the Chancellor provided for holding the subrogation provision to be inapplicable was because of the early case, *First National Bank of Rockwood v. Insurance Co.,* 2 Tenn.Ch.App. 90 (1901) (Aff'd by Supreme Court without modification.) In *First National,* the Court held that under the facts of that case where the mortgagor obtained the insurance at the request and on the requirement of the mortgagee with the mortgagor paying the premiums, "the insurance operates *pro tanto* to discharge the mortgage debt and the insurer is not entitled to subrogation." *Id.* at 108. The facts of that case are clearly distinguishable and it is therefore inapposite. In *First National,* the mortgagor and mortgagee were named as joint insureds and the mortgagee was not listed as the lienholder in a standard loss payable clause such as the one which prevails in the present case. Nor did the insurance policy

in question have a subrogation provision which, as we have already alluded to, is the main provision involved in the present appeal. We believe that the holding in that case is limited to the unique facts presented therein.

Our research reveals that the weight of authority supports the enforcement of a subrogation provision such as the one involved in the case at bar. "It is generally held that a policy may validly provide that an insurer shall be subrogated to the mortgagee's rights, upon payment of a loss to the latter." 6A Appleman, Insurance Law and Practice, § 4071 (1972). Such provisions have been "consistently held to be valid...." *Quincy Mut. Fire Ins. Co. v. Jones,* 486 S.W.2d 126, 128 (Tex.Civ.App. 1972).

*Scott v. Northwestern Agencies,* 75 Or. App. 187, 706 P.2d 195 (1985) is a case with similar facts to the one at bar. In *Scott,* plaintiffs operated a trucking concern out of Arizona. Their truck was insured against fire, theft and collision loss by Lloyds of London. The policy was procured through defendant who was an Oregon insurance agent. The insurance policy contained a standard loss payable clause similar to the one involved in the present case. That clause included a ten-day notice provision for the lienholder's benefit as well as a subrogation provision. Plaintiffs' policy lapsed, without their actual knowledge, and two days after the expiration of the policy, the truck was destroyed in an accident. Plaintiffs sued the insurance agent for negligently failing to notify them that the insurance would not be renewed and for failing to procure other insurance for plaintiffs upon the expiration of the policy. Defendant primarily argued that plaintiffs were not damaged because they were in fact insured for the amount of the lien even though the policy had lapsed. The court held that defendant's argument was unfounded. We find the court's holding to be well reasoned and duplicate a portion thereof below.

The policy had expired by its own terms, with coverage extended to the lienholder for 10 days under the grace period clause. Still, as to the loss of the named insureds—plaintiffs, Lloyds was not liable because the policy was not in force for plaintiffs' benefit at the time of the loss. *Thus, the subrogation clause, which requires that there be no liability from Lloyds to the insured for its operation, applied upon Lloyds' paying the loss to the mortgagee.*

Defendant suggests that the 10-day grace period clause was part of plaintiffs' bargain with Lloyds in consideration for the premium that was paid and inured to plaintiffs' benefit. This reasoning leads, however, to the awkward conclusion that a party procuring insurance for an encumbered property obtains one year and 10 days of insurance, while one insuring debt free property receives only one year insurance coverage, all for the same premium. *The better construction of the 10-day grace period is that it,* like the standard mortgage clause, *is for the benefit of the mortgagee.* (citations omitted)

[A] standard mortgage clause in effect creates a separate contractual relationship between the insurer and the mortgagee. (citations omitted) We view the 10-day grace period clause for the mortgagee as analogous to the standard mortgage clause. Lloyds' obligation, after the expiration of the policy, was to the lienholder for the debt owed and not to plaintiffs for their loss. (citation omitted) *Under the express terms of the policy, Lloyds could rightfully claim subrogation to the bank's position against plaintiffs on the debt.*

706 P.2d at 197–198 (emphasis supplied).

Although the result in this case may seem harsh, we believe that it is equitable. Appellees were given a reasonable opportunity to insure themselves against loss and chose not to do so. They could not have expected to be insured later than the policy's expiration date. After the fact, they attempted to take advantage of appellant's agreement with Chrysler Credit to extend coverage for ten days. Appellees, however, were not parties to that separate and distinct contract and therefore were not entitled to the benefits thereof. The subrogation provision was included in the loss

payable clause and we are not provided with any persuasive legal reason to hold said provision invalid.

For the reasons stated, the judgment of the Chancery Court is reversed and the case is remanded for the entry of a judgment in favor of appellant. Costs on appeal are taxed against appellees.

TOMLIN, P.J. (W.S.), and FARMER, J., concur.