Argued November 19, 1946; affirmed January 14, 1947

# MURRAY *v.* WILEY ET AL.

(176 P. (2d) 243)

*Hugh L. Biggs,* of Portland (with Maguire, Shields, and Morrison, of Portland, on the brief), for respondent.

*Wm. Kuykendall* and *Arthur W. Schaupp,* both of Klamath Falls (with Kuykendall and Kuykendall, on the brief), for appellants.

Before BELT, Chief Justice, and ROSSMAN, KELLY, BAILEY, LUSK and BRAND, Justices.

BRAND, J.

This is the second appeal in the case. For a full understanding of the facts, which were complicated, reference is made to our previous opinion, *Murray v. Wiley et al.,* 169 Or. 381, 127 P. (2d) 112, 129 P. (2d) 66. The facts will not be repeated here except as may be necessary for the decision of the narrow issues now before us.

Prior to August 20, 1932, E. J. Murray was the owner of the real property described in the complaint. Prior to that date the plaintiff, as owner, had executed a first mortgage in favor of the Pacific Savings and Loan Association. On August 20, 1932, Murray conveyed the property to the Conger Corporation by a deed absolute in form but which upon the prior appeal we held to be in truth a mortgage. In May 1934, the

Pacific Savings and Loan Association brought suit to foreclose its first mortgage, and on March 23, 1935, the property was sold pursuant to decree for $56,984.78, the mortgagee being the purchaser. On March 21, 1936, the Conger Corporation, in whom the record title then rested, acting as owner gave notice of intention to redeem. On the last day of the redemption period, the Conger Corporation assigned to the appealing defendants the right of redemption and executed and delivered to them a bargain and sale deed to the property. On the same day, the purchasing defendants exercised their purported rights by redeeming the property and thereafter claimed to be the owners in fee free from any claim of the plaintiff. Since the date of redemption, the purchasing defendants have been in possession of the property.

On the first appeal to this court, we held that the defendants who ''received a conveyance from the Conger Corporation together with an assignment of the right of redemption were the assignees of the rights which in equity belonged to the plaintiff, * * * and upon exercising the statutory right of redemption the purchasing defendants must now be held to be mortgagees in possession, having the right to foreclose against the plaintiff, but being subject to his right to redeem upon payment of the sums found to be due them.'' *Murray v. Wiley,* supra. We found that the defendants, acting as assignees of rights which in equity belonged to the plaintiff, had, in connection with the redemption of the property, paid about $65,000, and that defendants were entitled to credit in that amount plus interest thereon at the rate of six per cent per annum. We sent the case back to the circuit court for full accounting. An accounting was had in the circuit court in which the defendants claimed credit for $65,000

as the redemption cost, together with interest thereon at ten per cent from March 23, 1936. Of this sum $63,711.60 was paid to redeem the property from the first mortgage, and the balance was paid as indicated in our first opinion. The trial court disallowed the claim of the defendants for interest at the rate of ten per cent per annum upon the balances due on the payment of $65,000 and allowed six per cent on such unpaid balances.

■ The first assignment of error asserts that the trial court erred in disallowing the claim for ten per cent and allowing only six per cent interest per annum. We think our previous decision established the law of the case and should not be disturbed. *Public Market Co. of Portland v. City of Portland,* 179 Or. 367, 170 P. (2d) 586; *Murray v. Wiley,* supra; *Simmons v. Washington Fidelity National Insurance Co.,* 140 Or. 164, 13 P. (2d) 366.

■ We deem it proper, however, to comment briefly on defendants' contention. They base their claim for ten per cent upon the provisions of the statutes which relate to redemption from sales on foreclosure. O. C. L. A. §§ 6-1604, 6-1605. At the time of our decision on the first appeal and under the ruling then made, there was no foreclosure sale from which to redeem. We then held that in the eyes of equity the defendants were merely mortgagees in possession who had incurred expense for the benefit of the plaintiff, and that the plaintiff was in equity seeking to establish his rights as a mortgagor and his further right to redeem, not from a foreclosure sale but from an unforeclosed mortgage. When the defendants redeemed the property from the sale on foreclosure under the Pacific Savings and Loan Association mortgage, the effect of that sale

was completely wiped out. *Kaston v. Storey,* 47 Or. 150, 80 P. 217, 114 Am. St. Rep. 912; 37 Am. Jur., Mortgages, § 854. The defendants in redeeming the property from that sale were acting as grantees of the mortgagor and as holders of the legal title. Only as such were they entitled to the benefit of the statute authorizing redemption within one year. O. C. L. A. § 6-1605. The defendants have a lien upon the property of the plaintiff, who is the true owner, but that lien has never been foreclosed and they are still mortgagees in possession. The cases cited by the defendants are not in point since they relate to the rule applicable to redemption from sale on execution. The plaintiff as equitable owner is entitled to receive the legal title upon payment to the defendants of the amount in which it shall be determined that defendants have a lien. Interest was properly calculated at the statutory rate of six per cent per annum.

■ As the second assignment of error, the defendants assert that the court erred "in finding that the defendants are entitled to credit in their accounting for $3,152.95, and in not finding that the defendants should be entitled to a credit in their accounting for $16,500, this being the amount paid by defendants to the Collector of Internal Revenue on the income tax lien foreclosed by the Government, and in finding that said sums should bear interest at six per cent per annum and in not finding that the whole sum should bear interest at ten per cent per annum."

The trial court found that there was a valid claim for federal income tax in the sum of $3,152.95 assessed against the plaintiff and which was a lien upon the real property in question. Instead of making a valid tender and payment of the amount of the lien, which

they could legally have done, thereby freeing the property of the lien, the defendants elected to let the property go to sale. On the sale conducted by the Collector of Internal Revenue and upon competitive bidding, the defendants purchased the property for $16,500. Here also our decision on the first appeal has become the law of the case. We said:

"There was, at the time of the conveyance to the purchasing defendants, a lien for about $3,200 against the property for personal income taxes assessed against the plaintiffs. In November 1936, Deputy Collector Owlsley discussed the matter with defendant, Watters. Owlsley testified as follows:

" 'He (Watters) told me we could sell the property, and he would appeal the sale and buy it back; his statement was that such a purchase would better perfect the title.'

"Watters' statement, as repeated by Owlsley, fortifies our earlier conclusion that the purchasing defendants had notice of plaintiff's outstanding equity, otherwise why would they let the property go to sale on the income tax lien in order to perfect the title? Surely, a proper tender of the amount of the tax at a proper time could have been made and would have been accepted by the collector.

"In April 1937, the Collector of Internal Revenue proceeded to sell the property to realize the tax. The defendant purchasers made a tender which, for unexplained reasons, was rejected. The property was sold by the collector and was bid in by the purchasing defendants for $16,500. We cannot in this suit adjudicate the rights of the parties against the collector, as he is not now a party to this case, having successfully challenged the jurisdiction of the court, but the defendants assert that the 'amount of $16,500 is now held by the Collector of Internal Revenue with the understanding that it will be accounted for on the determination of this suit.' In the opinion of the circuit court it appears

that counsel for Collector Maloney informed the court that 'In disposing of the moneys which he holds in the premises, he (Maloney) will govern himself in accordance with the terms of the decree in this case.' The amount of tax which stood as a lien against the property immediately prior to the sale by the collector must, in the accounting, stand as a further credit to the purchasing defendants. Having freed the property from the tax lien, they are entitled to add that amount, with interest at six per cent, to their claims against the property. They are, of course, entitled to receive from the collector the balance of funds now in his hands over and above the amount which he may be entitled to retain." *Murray v. Wiley,* supra.

It is apparent that in letting the property go to sale and then bidding it in for a large sum, defendants were seeking to perfect their title against any claim of ownership by the plaintiff. This we have held they had no right to do. *Hearn v. Yoder,* 193 Okla. 353, 143 P. (2d) 1009; 2 Jones, Mortgages (8th ed. 1928) §§ 882, 883. Acting as the record owners, they could have paid but did not pay the amount of the lien. They elected to bid at the sale in competition with other bidders who were strangers to the title in an attempt to secure a new title which would wipe out the claim of the plaintiff. They did it believing that they would be able as owners of the record title to receive back from the Collector of Internal Revenue the difference in cash between the amount owed the collector and the amount bid as purchase price. Since the deed under which the defendants held was in reality a mortgage, they had the right as mortgagees in possession to pay the tax and add that amount to their claim of lien; but it would be unconscionable for them to add $16,500 to the amount of their lien as against the plaintiff when

the only apparent reason for allowing the property to go to sale was to defeat the plaintiff of his rights as mortgagor. Defendants merely assert that the redemption statute applies and that literally construed it entitles them to reimbursement for all sums they "were required to pay on prior liens." Even if the redemption statute were applicable, the record does not establish that defendants were "required to pay" the sum of $16,500 on the income tax lien.

The trial court properly held the defendants entitled to a credit of $3,152.95 with interest computed at six per cent as directed in our first opinion. The defendants are entitled to recover from the Collector of Internal Revenue the amount held by him and representing the difference between the amount of the lien for taxes and the amount of the sale. Thus the defendants will receive what they expended for the property, and we think they are entitled to no more.

■ As their third assignment, the defendants contend that the court erred "in finding that defendants were not allowed a credit for fees for supervision and in striking from said accounting the compensation paid by defendants for supervision during intervening years." The trial court disallowed defendants' claim for credit at the rate of $20 per month on account of payments to T. B. Watters, one of the defendants, as compensation for renting, collecting rentals and supervising the premises. The defendant Watters, a dealer in real estate and insurance, was the owner of an eighth interest in whatever rights the defendants had in the premises. He testified that he attended to repairs, the collection of rentals, the keeping of the books and management of the building, and that $20 per month was a reasonable fee for his services. We find

no claim that he rendered any unusual service in connection with the management of the property.

In *Caro v. Wollenberg,* 83 Or. 311, 163 P. 94, this court said:

> "While the mortgagee is in possession of mortgaged realty his attentions to the matter are in his own interest and he cannot collect pay for services rendered for himself." *Caro v. Wollenberg, supra.*

In *Investors Syndicate v. Smith,* 105 F. (2d) 611 (C. C. A. 9th, 1939), the Court of Appeals in construing the Oregon law on this point said:

> "A mortgagee in possession must account for, and apply, the rents and profits on the debt secured; is entitled to reimbursement for keeping the property in repair, but 'cannot collect pay for services rendered for himself' in attending the mortgaged property, or obtain 'reimbursement for permanent improvements which he installs.' " *Investors Syndicate v. Smith, supra.*

Again it is said:

> "A mortgagee in possession is not entitled to compensation for his own trouble in taking care of the estate and renting it, although there is an agreement between him and the mortgagor that he shall have such compensation. The reason given for this rule is, that to allow such compensation would tend directly to facilitate usury and oppression. And moreover the care he bestows is for the furtherance and protection of his own interests, being not an agent, but for the time, as it were, the owner." 2 Jones, Mortgages (8th ed. 1928) § 1449.

The cases cited by the defendants represent the minority rule which we are not disposed to follow.

The defendants seek to distinguish the case of *Caro v. Wollenberg, supra,* by pointing out that, although the defendant Watters who managed the property was

one of the mortgagees, he was also acting for the benefit of the other mortgagees as well as for himself. The defendants would seek the benefit of some cases from other states which have held that a mortgagee may charge for the services of an agent employed by him to collect rents when a prudent owner acting for himself would probably have done so. 2 Jones, Mortgages (8th ed. 1928) § 1450. Our decisions have made no such distinction, and we think the facts of this case do not require any extension of the rule as above stated. All of the defendants in the case at bar have acted in unison according to a careful plan to defeat the plaintiff in his rights to the property, and in general they have acted through the defendant Watters as ther representative.

■ The defendants as their fourth contention assert that the trial court erred in refusing to allow the defendants credit for premiums paid by the defendants for insurance of various kinds upon the real property in question. The evidence discloses that the insurance was of three kinds—fire, plate glass and public liability. The policies were issued by companies which the defendant Watters represented as agent, and they yielded to him a substantial commission. The policies were in favor of the defendants as owners. The plaintiff was not named as a beneficiary nor was the insurance taken out for his benefit. The defendant Watters testified:

"Q. Who did you list as owners of the building? That is what I'm interested in knowing.

"A. Mary L. Moore, M. S. West, C. J. Martin and T. B. Watters.

"Q. You never listed Mr. Murray?

"A. No.

"Q. So that, in any action that might have been brought there as a result of an accident or injury

occasioned from a defect in that building, Mr. Murray would not be protected in any of your policies, if somebody might differ with you and have sued him as owner? You did not attempt to protect Mr. Murray by your public liability insurance, did you?

"A. No.

"Q. Who was your fire insurance loss payable to?

"A. To the same parties.

"Q. Mr. Murray was not listed as having any interest whatsoever in the building?

"A. No."

Relying upon the rule stated in *Caro v. Wollenberg,* supra, and in 2 Jones, Mortgages (8th ed. 1928) § 1426, to the effect that mortgagees in possession bear a relationship to the mortgagors analogous to that of a trustee and *cestui que* trust, defendants base their claim on the rule that express trustees have a duty to use reasonable care and skill to preserve the trust property which may include the duty to take out fire insurance. Restatement, Trusts § 176 and illustrations.

In seeking to avoid the rule relative to mortgagees in possession, the defendants say: "They were not mortgagees in possession and they only became mortgagees in possession or trustees by virtue of the decision of the Supreme Court." Obviously this court did not convert innocent title holders into mortgagees in possession by virtue of its decision. We merely declared that in the eyes of equity they had been and were mortgagees in possession. The position of the defendants in this case is entirely different from that of trustees of an express trust. When a trustee as a reasonably prudent person takes out insurance on the trust *res,* it is done for the benefit of the *cestui que* trust and not for the benefit of the trustee. In the case at bar the insurance was for the benefit of the mort-

gagees in possession. The insurance taken out by the defendants was of no benefit to the plaintiff.

In *Milwaukee Mechanics' Ins. Co. v. Ramsey,* 76 Or. 570, 149 P. 542, L. R. A. 1916A, 556, Ann. Cas. 1917B, 1132, this court said:

"It is well settled that if a mortgagee, having, as he does, an interest in preserving the property pledged to him as security, insures the same at his own expense, and a loss by fire occurs, the insurer, paying the loss to the insured mortgagee to the amount of the debt, is subrogated to the means of enforcing payment of the original obligation by the debtor. In such instances the claim is not extinguished until payment by the one primarily liable. All that has happened in that respect, is a change of creditors. The reason is that the insurance contracted and paid for by the mortgagee has the effect of making the insurance company a surety to the holder of the mortgage for the payment of the debt. Having liquidated the same, the insurer is subrogated to the rights of the one to whom payment is made, which is the same as though he had signed as surety and paid the promissory note, for the debt is really what is insured in such cases. In very truth the mortgagee has nothing else to insure, and when the debt is paid his policy lapses. The transaction is an instance of a contract directly between the mortgagee and the insurer, and is worked out like any other surety stipulation, with the resulting subrogation." *Milwaukee Mechanics' Ins. Co. v. Ramsey, supra.*

Again it is said:

"Where it is part of the contract of the mortgagor and a condition of the mortgage, that he shall keep the premises insured in a certain sum for the benefit of the mortgagee, charges for premiums paid by him for such insurance, which the mortgagor has neglected to obtain, or pay for, are al-

lowed, though the insurance obtained be 'for whom it may concern,' and payable to the mortgagee. But he is not allowed for premiums paid by him to insure his own interest as mortgagee where the amount recovered in case of loss would go to him for his sole benefit without extinguishing the mortgage debt pro tanto. * * *

"Unless there be a provision in the mortgage for insuring the property for the mortgagee's benefit, he is not generally allowed for premiums paid by him for such insurance. * * *

"Insurance procured by the mortgagee is not chargeable to the mortgagor, unless it is procured at his request, or in accordance with a provision in the mortgage." 2 Jones, Mortgages (8th ed. 1928) § 1452.

To the same effect see 46 C. J. S., Insurance, § 1213 at 183.

"A mortgagee in possession of the mortgaged premises is held, in some cases, not to be entitled to a credit for insurance taken out by him on the mortgaged premises, in the absence of an agreement of the parties relative thereto, but there is also authority to the contrary on this point. In any event, where by the terms of the mortgage, the mortgagor is required to keep the property insured, the mortgagee in possession is entitled to credit for insurance taken out by him, with interest on the amount of the expenditure. A different rule has been applied, however, where the mortgagee insured under a claim of ownership of the property and, in obtaining the insurance, proceeded on his own account wholly outside of his relations to the mortgagor." 36 Am. Jur., Mortgages, § 312.

The court did not err in refusing to allow credit on account of insurance premiums paid by the defendants.

■ The last assignment of error relates to the ruling of the circuit court in sustaining objections to three

items of credit claimed by the defendants in their accounting. The first item represents a disbursement by the defendants to Robinson, Nowell and Company, accountants, in the sum of $156.25 as compensation for unsuccessful efforts by a member of that firm to secure a refund from the Collector of Internal Revenue of the excess of the bid of $16,500 over the actual tax item of $3,152.95, to which we have already referred. Had the defendants paid the tax instead of permitting the property to go to sale, they would have had no occasion to incur this expense. We think the trial court was correct in disallowing this item.

■ The other two items of credit, sought by the defendants and disallowed by the court, were in the amounts of $200 and $350 paid to Rollin Rodolph & Company for accounting in connection with the preparation of the supplemental and final accountings which were filed in the lower court as a part of the pleadings after the remand of the case. The law imposes upon the defendants the duty of accounting for the rents and profits received by them as mortgagees in possession. We know of no rule which would authorize them to charge against the plaintiff the expense of preparing the accounts. The accounts which were filed by the defendants purport to show a balance in their favor amounting to approximately $100,000, whereas the accounts as recast by the court showed a balance in the sum of $20,257.73. In preparing and submitting an accounting, the defendants were furnishing to the plaintiff only information to which plaintiff was entitled without the necessity of conducting any litigation. Under the circumstances of this case, we think the trial court properly disallowed the items for expense of accounting.

■ We come now to the contentions of the plaintiff on his cross-appeal. The plaintiff contends that "the trial court erred in refusing to surcharge defendants' accounts with such additional rentals as were reasonably obtainable if defendants had operated and managed the building prudently and with the degree of care and deligence required of a mortgagee in possession." His claim is predicated on the alleged failure of the defendants to lease the entire ground floor space in the building to the Woolworth Company on a long term lease and at a rental considerably in excess of the amount the property was then bringing in. Defendants have accounted for the rentals actually received, but it is contended that in the exercise of reasonable prudence they should have charged and received a greater rental.

We are of the opinion that the evidence does not sustain the plaintiff's contention on this point. The property involved in this case is a two-story building in the business district of the City of Klamath Falls. There are two available rooms on the first floor of the building suitable for commercial leasing, the larger room having been continuously occupied by the Woolworth Company. The original Woolworth lease expired on June 28, 1944. It provided for a rental of $550 per month. The evidence discloses that the Woolworth Company desired to rent both the larger and smaller store rooms upon the first floor of the building upon a long term lease for a period of twelve years and at a probable rent of $1000 per month. A form of lease was prepared but was not executed partly because of the institution of this suit by the plaintiff. The Woolworth Company was unwilling to enter into a long term lease unless it could be assured of protection not only from the defendants but from

the plaintiff in this litigation. The plaintiff indicated in general terms a willingness to cooperate with the defendants in giving the required assurance of permanency to the Woolworth Company, but it appears that the defendants were apprehensive lest they prejudice their rights in litigation by entering into any agreement with the plaintiff relative to the proposed twelve year lease with the Woolworth Company. The reason given by counsel for the defendants for refusing to cooperate with the plaintiff was that "we don't want to recognize any right that you may assume that you have in that property."

The plaintiff's suit was commenced in the fall of 1938. Negotiations were carried on relative to the Woolworth lease for a period of many months. The first appeal in this case was decided on December 29, 1942, and the renewal of the Woolworth Company lease operated from June 1, 1944. It must be recalled that the decision of the trial court from which the first appeal was taken was favorable to the defendants. There was, therefore, a period of time between the decision of the trial court and the rendition of the decision on the first appeal in this court during which the defendants may well have believed themselves to be without any legal obligation to the plaintiff. Upon the remand of the case the trial court gave careful consideration to the contention of the plaintiff that the accounts of the defendants should be surcharged for rent which perhaps could have been but was not obtained. In its opinion the trial court said:

"There is testimony indicating nothing more than negotiations for a new lease with Woolworth, and that Woolworth and the defendants had not reached an agreement in regard thereto; that extensive improvements in the ground floor of the

building would have been required for such new lease to Woolworth, the cost thereof being about $20,000. After the negotiating parties had found some basis for agreement as to a new lease, it was disclosed that the persons negotiating in behalf of Woolworth did not have authority to agree upon terms of the lease, but that it and the terms thereof must be submitted to the New York office of the prospective tenant.''

We are in accord with the views expressed by the trial judge. In view of the length of the proposed lease, the complications which arose from the fact that the property was in litigation and the indefiniteness of the evidence relative to the possibility of securing a long term agreement with the Woolworth Company, we cannot say that the defendants failed in the exercise of reasonable prudence in the handling of the rentals from the property in question.

■ It appears that the trial court, perhaps by inadvertence on the part of counsel, entered a personal judgment against the plaintiff for the balance which was found in favor of defendants upon the accounting. The decree should be modified so as to provide that defendants have a lien upon the mortgaged property in the amount of the ascertained balance but eliminating the personal judgment against plaintiff in that amount.

Except as modified, the decree of the trial court is affirmed; and the cause is remanded for a further accounting of the rents and profits as to the period subsequent to that covered by the previous accounting. The circuit court will again determine upon and specify a reasonable time within which plaintiff may redeem from the lien of the defendants' mortgage or be forever barred by the dismissal of his suit. Plaintiff may have his costs.