FIRST NATIONAL BANK IN SIOUX CITY, Appellee,

v.

Jerome E. WATTS, Defendant,

and

Farm & City Insurance Company, Appellant.

No. 89–995.

Supreme Court of Iowa.

Nov. 21, 1990.

Joe Cosgrove of Yaneff & Cosgrove, Sioux City, for appellant.

W.J. Giles III, Sioux City, for appellee.

Considered by HARRIS, P.J., and CARTER, LAVORATO, NEUMAN, and SNELL, JJ.

LAVORATO, Justice.

A bank sued an insurer that provided collision coverage on a vehicle owned by the bank's debtor. The bank was the lienholder under a loss payable clause in the insurance policy. The debtor failed to pay a premium to continue insurance coverage beyond the term of the initial policy. After the policy lapsed, a loss occurred to the vehicle.

The district court concluded that the failure to pay the premium was an act or neglect of the owner within the meaning of the loss payable clause. The court also concluded that the bank was entitled to notice that the policy had been canceled because the debtor had failed to pay the premium. For these reasons the court, fol-

lowing a bench trial based on a stipulation, entered judgment in favor of the bank for the amount of loss. We reverse and remand with directions.

The following facts are uncontroverted. Jerome E. Watts purchased a 1987 Pontiac Grand Am from Bob Tagatz Pontiac, Inc., in Sioux City. Watts entered into a retail sales installment contract and security agreement with the car dealer. The following day the car dealer assigned the contract and debt to First National Bank of Sioux City.

Farm and City Insurance Company issued Watts an insurance policy on the vehicle. The policy contained the following provision:

Policy Period.

12:01 A.M. Standard Time Each Date
From 10–30–86 To 1–30–87

The term of this policy shall be as of 12:01 A.M. standard time as to each of the dates given hereon, and for such terms thereafter as the required renewal premium is paid by the insured on or before the expiration of the current term and accepted by a duly authorized representative of the company.

The policy listed the bank as a loss payee under the comprehensive and collision coverage. The loss payable clause provided in pertinent part:

LOSS PAYABLE CLAUSE. Loss or damage, if any, under the policy shall be payable as interest may appear to Loss Payee (Lienholder) ... and this insurance as to the interest of the ... [Lienholder] ... shall not be invalidated by any act or neglect of the ... Owner of the ... automobile....

... The company reserves the right to cancel such policy at any time as provided by its terms, but in such case the company shall notify the Lienholder when not less than ten days thereafter such cancellation shall be effective as to the interest of said Lienholder therein and the company shall have the right, on like notice, to cancel this agreement....

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of such policy, other than as above stated....

The bank was a lienholder within the meaning of the loss payable clause.

On February 1, 1987, just a few days after the end of the policy period, the car was destroyed in a collision. On October 19, 1987, the bank's attorney wrote to Farm and City. The attorney informed Farm and City that Watts' vehicle was totally destroyed, that Watts owed the bank $9700, and that the vehicle was worth that amount. The attorney made a demand on Farm and City to pay the $9700 under the loss payable clause. The attorney took the position that

pursuant to section 515D.7 of the 1987 Code of Iowa an affirmative duty exists on the part of [Farm and City] to comply [with section 515D.7] relating to renewal, as also mandated by section 515D.5 of the 1987 Code of Iowa.

On November 30, 1987, Farm and City wrote to the bank in response to the attorney's letter of October 19:

This policy expired for nonpayment of premium on 1–30–87. This was an expiration, not a cancellation. We are required to notify the insured only if the policy is canceled and we do not intend on giving an opportunity to renew.

Mr. Watts was required by the State of Iowa to maintain an SR22 future proof of financial filing[. W]hen a policy expires, a notification (SR26) of cancellation of an SR22 filing is mailed to the State of Iowa Drivers License Division. We are required to maintain the liability coverage for ten days from the date of expiration. This extension does not include comprehensive, collision or medical coverage.

See Iowa Code §§ 321A.19, .22.

The bank's attorney wrote Farm and City again on December 2. Apparently the attorney's first letter and Farm and City's response crossed in the mail because the attorney indicated he had received no response. In his second letter, the attorney enclosed a photocopy of the declaration page of the policy showing the bank as loss

payee. The attorney took the additional position that the bank was a "third-party beneficiary under [the policy] and was entitled to notice so that it could protect its insurable interest in [Watts' vehicle]."

On December 9 Farm and City responded to the attorney's December 2 letter:

Our records indicate that on January 22, 1987, in accordance with our usual business practices a renewal notice was mailed to Jerome E. Watts, 1706 Hamilton Blvd., Sioux City, Iowa 51103, and the renewal notice was not returned by the post office. Our records further indicate that the policy expired for nonpayment of premium on January 30, 1987, and that when a policy expires at a term certain no cancellation is needed.

Accordingly, this company takes the position that there was no coverage afforded under this policy for physical damage to the 1987 Pontiac for the accident of 2–1–87 inasmuch as the policy had expired for nonpayment of premium.

The renewal notice referred to in Farm and City's letter informed Watts that the policy would expire on 1–30–87 at 12:01 a.m. standard time. The notice also informed Watts that "no grace period [is] afforded." The notice itself was entitled "Courtesy Reminder Notice." The notice also stated:

If you wish to apply for renewal of your policy, the premium shown below must be received by the above expiration date and renewal will be issued for the same coverages afforded by your present policy on the cars listed below for the renewal period shown below. Premium payment not honored will be deemed nonpayment and no coverage afforded.

On February 15, 1988, the bank's attorney responded to Farm and City's letter of December 9. The attorney restated his position that the bank was a third-party beneficiary and again demanded payment. The attorney also requested a copy of the policy.

Farm and City responded on February 22 and enclosed a copy of the policy. In its letter, Farm and City called attention to the termination provisions of the policy and to the automatic termination paragraph. The automatic termination paragraph reads:

*Automatic Termination.* If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

In this letter, Farm and City took the position that the policy terminated because Watts did not pay the required renewal premium when due. Farm and City then pointed out that in *Hoefler v. Farm and City Insurance Company,* 193 N.W.2d 538 (Iowa 1972), this court had held that insurance policies expire on a certain date. The letter goes on to state:

We take exception to your statement that your client is a third-party beneficiary.

Your client has no more rights than our insured does.

The loss payable clause that you are talking about says that we may demand from the … owner any premium due if we have renewed the policy and the payment has not been made. However, our business practice is not to renew a policy until payment is made[. H]owever, we do understand that other insurance companies will renew a policy before payment is made and so this is a reason for that particular paragraph.

Again we reiterate that the policy expired at a time certain for nonpayment of premium by the insured Jerome E. Watts or the First National Bank who had a copy of the declaration page and should have known in their usual business practices when the policy would expire.

About a month later the bank filed a petition in equity against Watts and Farm and City. The petition noted that Watts was an inmate at the Iowa State Penitentiary. It asserted a cause of action against him for the balance owed on the retail installment sales contract.

In this suit the bank sought a declaratory judgment. The bank asserted a third-

party beneficiary theory under the loss payable clause. The bank also asserted it was entitled to notice of Watts' failure to pay premiums or the possible lapse of the policy.

In its decision the district court phrased the issue this way:

Does the neglect of the owner to pay the premium invalidate the lienholder's insurance if the insurance company does not notify the lienholder of such nonpayment?

The district court referred to our prior decisions which held that an insurer need not give notice to an insured when a policy expires on a date certain. The court noted that these decisions were inapplicable to this issue. According to the court, these decisions dealt with notice to an insured, not a lienholder.

The court then turned its attention to certain language in the loss payable clause. The language provided that no act or omission of the owner which occurs after the policy is issued will affect the lienholder's rights. The court found that Watts' failure to pay the renewal premium was such an act or omission. The court concluded from this that such act did not invalidate the policy as to the bank.

The court also concluded that the insurer had to give the bank notice of cancellation according to the loss payable clause. The court found no such notice had been given. So the court concluded the policy was still in effect as far as the bank was concerned.

The district court entered a default judgment against Watts for $5873.79 plus interest. The court also entered judgment against Farm and City for the same amount less the $500 deductible under the collision coverage of the policy. The bank and Farm and City had stipulated to the amount of damages.

Farm and City appealed. Watts did not.

I. Farm and City contends that its policy was effective for a definite period and expired upon the stated expiration date. The stated expiration date was January 30, 1987, two days before the accident occurred. Farm and City argues it was not under a duty to notify the bank of the expiration date. We agree.

Contrary to what the bank argues and the district court held, we think this case turns on our holding in *Hoefler*. In that case the insurer issued the plaintiff an automobile insurance policy. Except for the difference in dates, the policy language defining the policy period matched the language here. *See Hoefler*, 193 N.W.2d at 539.

In *Hoefler* the policy had originally been issued on February 22, 1967. The policy was renewed for three similar periods of three months each. Thereafter the insured made no further payments. The insurer insisted the policy terminated by its specific terms. More than a year later the insured was involved in an automobile collision for which the insurer denied coverage. *Id.*

The insured sued the insurer on the policy. The insured claimed, and the district court found, that the policy was still in force because notice as required by Iowa Code section 515.80 (1971) had not been given. *Id.* This section remains essentially unchanged. *See* Iowa Code § 515.80 (1985). Section 515.80 provides that a policy may not be canceled without thirty days written notice to the insured that the premium is due or to become due. The notice must be given thirty days before, on, or after the policy maturity date. *Id.*

We rejected the insured's contention in *Hoefler*. We said the policy language defining the policy period was for a definite and specific term of duration. Because of this, we held that the policy automatically expired at the end of that term. No notice was required. *Hoefler*, 193 N.W.2d at 539–40.

Several months later we reaffirmed our holding in *Hoefler* on similar facts. *See Hensley v. Aetna Casualty & Sur. Co.*, 200 N.W.2d 552, 553–54 (Iowa 1972).

II. The bank does not take issue with our holding in *Hoefler*. Rather it argues, as the district court held, that our holding in *Hoefler* should not control because of the bank's status as a loss payee. Our question then is whether our holding in

*Hoefler* extends to lienholders under loss payable clauses. We think it does. And on this issue we find persuasive authority in two jurisdictions. *See Waynesville Sec. Bank v. Stuyvesant Ins. Co.*, 499 S.W.2d 218 (Mo.App.1973); *Reece v. Massachusetts Fire & Marine Ins. Co.*, 107 Ga.App. 581, 130 S.E.2d 782 (1963).

In *Waynesville* an insurer issued a fire insurance policy covering a mobile home owned by the insured. A bank held the mortgage on the mobile home. The policy contained a loss payable clause like the one here. The pertinent language of the loss payable clause in *Waynesville* provided that the bank's interest

> shall not be invalidated by an act or neglect of the ... Mortgagor or Owner.... [I]n case the ... Mortgagor or Owner shall neglect to pay any premium due under [the] policy the Lienholder shall, on demand, pay the same.

*Waynesville*, 499 S.W.2d 219–20.

Like the policy here, the loss payable clause in *Waynesville* reserved the right of the insurer to cancel the policy upon notice to the lienholder. But the loss payable clause, like the one here, made no provision for notice of the expiration of the policy and did not mention renewal. *Id.* at 220.

The parties in *Waynesville* agreed that the policy had expired and was never renewed or reinstated. The insurer never gave the bank notice that the policy had expired. Following the policy's expiration, a fire occurred. The insurer denied coverage. The district court found for the bank. On appeal the appellate court considered some of the same arguments that the bank raises here. *Id.* at 219–222.

One such argument centers around the nature of the loss payable clause. The district court here correctly noted that the loss payable clause is a union or standard mortgage clause. Such a clause expressly provides that the right of the mortgagee to recover is not invalidated by any act or neglect of the owner. *See Critchlow v. Reliance Mut. Ins. Ass'n*, 198 Iowa 1086, 1091, 197 N.W. 318, 321 (1924). The court also properly noted that a loss payable clause operates as a separate contract between the mortgagee and the insurer.

■ But we think the court erred when it determined that Watts' failure to pay the renewal premium did not invalidate the policy as to the bank. The court incorrectly concluded that Watts' failure was an "act or neglect of the owner" under the loss payable clause. The language "act or neglect of the owner" in a loss payable clause refers to breach of policy conditions by the owner. *Waynesville*, 499 S.W.2d at 221; *General Motors Accept. Corp. v. Western Fire Ins. Co.*, 457 S.W.2d 234, 236 (Mo.App. 1970). The loss payable clause operates as an independent contract between the insurer and the loss payee lienholder. So the owner cannot defeat the loss payee's interest by breaching a condition of the policy. *General Motors Accept. Corp.*, 457 S.W.2d at 236.

■ But there is no condition or provision in the policy that required Watts to renew it. *See Waynesville*, 499 S.W.2d at 221. So Watts breached no condition or provision of the policy when he failed to pay the renewal premium.

■ III. Another problem in this case is that the district court mistakenly equated cancellation with expiration:

> For the defendant insurance company to *cancel* the policy so far as the plaintiff was concerned the company was required to notify the plaintiff and not less than ten days after such notification such *cancellation* would then be effective as to the plaintiff. Such notice, of course, would give the company the right to demand plaintiff to pay the premium. Here the company gave no notice to the plaintiff so the policy remained in effect as to the plaintiff's insurance under the policy.

(Emphasis added.)

The difference between the two terms is succinctly stated in *Waynesville* where the court rejected similar reasoning:

> "Cancellation," as used in insurance law, means termination of a policy prior to the expiration of the policy period by act of one or all of the parties; "termination"

refers to the expiration of the policy by lapse of the policy period. In this case, the policy "terminated" or "expired" by lapse of the policy period. [The lienholder's] argument that it did not receive notice of cancellation is therefore wholly without merit.

*Waynesville*, 499 S.W.2d at 220; *See also Travelers Indem. Co. v. Fields*, 317 N.W.2d 176, 185 (Iowa 1982) (cancellation and nonrenewal are not synonymous).

Here the policy terminated or expired by lapse of the policy period. The ten-day notice provision for cancellation in the loss payable clause simply did not apply.

Because all of the cases the bank cites deal with cancellation, they do not apply. The statutory authority the bank cites fails for the same reason. There are no Iowa statutory provisions requiring notice in the circumstances of this case.

True, Farm and City did send Watts a "courtesy reminder notice," which was essentially an offer to renew. But the policy, by its terms, automatically terminated upon Watts' failure to pay a required renewal premium even though an offer to renew was extended.

While the bank was not notified of the opportunity to renew and did not have the automatic termination provision in its possession, it did have the declaration page. The page clearly specified when the policy period ended.

There was no policy provision requiring renewal. Renewal was offered at the discretion of Farm and City. The loss payable clause is intended to ameliorate the unfairness of a breach of a policy condition by the insured. But as we said, Watts did not breach a policy condition; he simply chose not to renew or was not aware of the offer.

■ IV. The remaining question is whether there is any inherent duty upon the insurer to give notice of expiration of a policy. In *Waynesville* the court decided not, giving the following reasons:

[Plaintiff] cites no authority, and we know of none, which requires that an insurance company, a private business, must continue to contract with an insured after the original policy has, by its terms, expired. There being no such obligation, the insurance company here was under no duty to disclose its intentions to plaintiff, assuming that they existed.

*Waynesville*, 499 S.W.2d at 222 (citing *Norkin v. United States Fire Ins. Co.*, 237 Cal.App.2d 435, 438, 47 Cal.Rptr. 15, 17 (1965)). We see no unfairness in this thinking. Where there is a clearly stated expiration date, the insured is charged with knowledge of it. *Scott v. Allstate Ins. Co.*, 57 N.C.App. 357, 359, 291 S.E.2d 277, 278 (1982).

Here the policy clearly stated an expiration date. The bank had a copy of the declaration page and so was fully aware of it. The policy gave the lienholder no greater rights than it gave the insured with respect to notice of expiration. *See Waynesville*, 499 S.W.2d at 220. So Farm and City was not required to notify the bank that the policy would expire by lapse of the policy period on January 30, 1987.

■ In sum we hold that absent a policy or statutory provision to the contrary, an insurer is under no inherent duty to notify a loss payee of the policy's expiration date or that the insured has failed to renew.

We have carefully considered all of the arguments the bank raises in support of the district court's ruling. We find none of them have merit.

V. Because the district court incorrectly applied the loss payable provision, we must reverse and remand. On remand the district court shall enter judgment in favor of Farm and City and shall dismiss the bank's petition against it with costs taxed to the bank.

REVERSED AND REMANDED WITH DIRECTIONS.