## IN THE COURT OF APPEALS OF TENNESSEE
## FOR THE WESTERN SECTION
## AT JACKSON

MUNFORD UNION BANK,                    )
                                       )
    Plaintiff/Appellee,                )       No. 02A01-9810-CV-00297
                                       )       Appealed from Tipton
v.                                     )       County
                                       )       Circuit No. 4868
AMERICAN AMBASSADOR CASUALTY           )
COMPANY,                               )
                                       )       **FILED**
    Defendant/Appellant.               )
                                       )       **August 23, 1999**

From the Circuit Court of Tipton County, Tennessee

**Honorable Joseph H. Walker, III, Judge**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

**William C. Cole**, Millington, Tennessee
Attorney for Plaintiff/Appellee.

**Bruce A. McMullen**, Memphis, Tennessee
THOMASON, HENDRIX, HARVEY, JOHNSON & MITCHELL, Memphis, Tennessee
Attorney for Defendant/Appellant.

**OPINION FILED:** _____

**REVERSED and DISMISSED**

**TATUM, S.J.**

**HIGHERS, J.:** (Concurs)
**FARMER, J.:** (Concurs)

**O P I N I O N**

Plaintiff/Appellee, Munford Union Bank, filed suit in General Sessions court against Defendant/Appellant, American Ambassador Casualty Company, for "recovery under loss payee provisions of automobile insurance policy No. 175843 insuring a 1997 KIA Sephia automobile --- owned by Kelvin Jones, which was totaled on about September 11, 1997." The General Session's judge entered judgment in favor of the Plaintiff in the sum of $13,409.13 and the insurance company appealed to Circuit Court.

The case was tried by the circuit judge without intervention of a jury. The circuit judge rendered judgment in favor of the Plaintiff in the sum of $13,409.13, stating, in part, as follows:

> The court finds that by accepting payment for the vehicle knowing it was a total loss before the renewal payment is inconsistent with providing coverage with a lapse; therefore, the insurance company waived the lapse in coverage and provided continuous coverage. The court finds the clause in question created a separate and distinct contract for plaintiff Bank's benefit, that no notice of cancellation was sent to Bank or received, that the premium was paid and accepted by defendant insurance company, and that coverage was provided to the loss payee for the vehicle.
>
> IT APPEARING TO THE COURT that the Plaintiff, Munford Union Bank, was the loss payee under a contract of insurance between the Defendant and Kelvin Jones, that the Plaintiff did not receive the required notice of cancellation to discharge the Defendant's obligations under the contract of insurance, that the Defendant waived any lapse in coverage by accepting the renewal premium from Kelvin Jones, and therefore coverage was provided to the Plaintiff under the afore-referenced insurance policy.

The appellant insurance company presents the following issues:

1. Did the trial judge err in holding that Ambassador breached its contract with Munford when Ambassador did not give notice to Munford ten (10) days before the insurance policy expired?

2. Did the trial judge err in holding that Ambassador waived the lapse of coverage when Ambassador reinstated the policy of insurance effective one day after the loss?

In April 1997, Kelvin Jones (Insured) purchased a 1997 KIA Sephia automobile. Munford Union Bank (Bank) financed the purchase and obtained a lien on the automobile to secure the loan to Jones. On May 14, 1997, Jones purchased a policy of collision insurance from American Ambassador Casualty Company (Insurance Company) through its agent, CEC Insurance Agency. On June 10, 1997, an "additional interest notice" was issued by the Insurance Company to the Bank stating that the coverage effective date was

2

"from 05/14/1997 to 08/20/1997." Among other things, the additional interest notice stated:

> "Policy period is continuous. A final notice of cancellation will
> be mailed to you if this policy has been canceled."

The Bank was also issued a loss payable clause annexed to the additional interest notice. The loss payable clause provided:

> "loss or damage, if any, under the policy shall be payable as
> interest may appear to the loss payee "lienholder" as named
> in the declarations and this insurance as to the interest of the
> [lienholder] shall not be invalidated by any act or neglect of the
> lessee, mortgagor, owner of the within described automobile
> or other data nor by any change in the title or ownership of the
> property ---."

> \* \* \* \* \* \* \*

> "The company reserves the right to cancel such policy at any
> time as provided by its terms, but in such case the company
> shall notify the lienholder when not less than 10 days
> thereafter such cancellation shall be effective as to the interest
> of said lienholder therein, and the company shall have the
> right, on like notice, to cancel this agreement."

A second "additional interest notice" (with identical loss payable clause) was issued to the Bank by the Insurance Company on September 8, 1997, giving "coverage effective date from ":07/29/1997 to :08/20/1997."[1] The second additional interest notice was identical to the first additional interest notice except for the dates, and the second notice did not contain the statement:

> "Policy period is continuous. A final notice of cancellation will
> be mailed to you if this policy has been canceled."

The Insured, Kelvin Jones, did not renew or extend the term of the policy after August 20, 1997, and it expired on that day. On September 11, 1997, Mr. Jones was involved in a wreck with the KIA vehicle. The day after the accident, September 12, 1997, Mr. Jones went to CEC Insurance Agency, the agent for the appellant Insurance Company, to pay his renewal premium. Mr. Jones told the agent, Mr. Don Edgar, that the vehicle had been wrecked. Mr. Jones was informed by Mr. Edgar that the policy on the financed vehicle had lapsed. Mr. Jones tendered payment to Mr. Don Edgar, in the sum of $350.54 to renew the lapsed policy on the vehicle that had been wrecked, and upon another vehicle

---

[1]The second notice was apparently issued when the insured had a second automobile added to the policy, upon which the Bank did not have a lien.

that had been acquired by Mr. Jones. Mr. Edgar contacted the Insurance Company and was told that the premium could be accepted, but there would not be coverage for Mr. Jones on the accident of September 11, and that the policy would be reinstated as of midnight the night of September 12. The premium was paid, and another additional interest notice with loss payable clause was issued to the Bank for a period from 9/13/97 to 9/13/98 and containing the language "renewal with lapse." At no time before the accident was Munford Bank notified that the vehicle had no insurance on it or that the policy had lapsed.

In considering the issues, we must keep the following rules in mind. In <u>Ballard v. North American Life & Casualty Co.</u>, 667 S.W.2d 79, 82-83 Ct. App. (Tenn. 1983), this Court said:

> In the absence of fraud or mistake, a contract must be interpreted and enforced as written even though it contains terms which may be thought harsh and unjust. *E.O. Bailey & Co. v. Union Planters Title Guaranty Co.,* 33 Tenn. App. 439, 232 S.W.2d 309 (1949).
>
> In construing contracts, the words expressing the party's intention should be given the usual, natural and ordinary meaning. *Moore v. Life & Casualty Ins. Co.,* 162 Tenn. 682, 40 S.W.2d 403 (1931).
>
> In *Guardian Life Ins. Co. of America v. Richardson*, 23 Tenn. App. 194, 129 S.W.2d 1107 (1939), the court set out the rule for construction of insurance contracts as:
>
> "Contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary, and popular sense. The rule of strict construction does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists, nor does it authorize the court to make a new contract for the parties or disregard the evidence (intention) as expressed, or to refine away terms of a contract expressed with sufficient clearness to convey the plain meaning of the parties and embodying requirements, compliance with which is made the condition to liability thereon. Neither does the rule prevent the application of the principle that policies of insurance, like other contracts, must receive a reasonable interpretation consonant with the apparent object and plain intent of the parties." (Citations omitted).
>
> *Id.* 129 S.W.2d at 1115, 1116.
>
> Where there is no ambiguity, it is the duty of the court to apply to the words used their ordinary meaning and neither party is

to be favored in their construction. *Brown v. Tennessee Automobile Ins. Co.,* 192 Tenn. 60, 237 S.W.2d 553 (1951).

We now address the first issue. The trial judge held that the Insurance Company was required to give the loss payee Bank notice of cancellation to discharge its obligations to the bank under the contract of insurance. The Insurance Company cites <u>Gibson v. Tennessee Farmers Mutual Insurance Co.</u>, 719 S.W.2d 299 (Tenn. Ct. App. 1986), in support of its contention that the above mentioned provisions in the loss payable clause, requiring notice to a lienor when the insurer cancels a policy, are not applicable when the policy expires or terminates by its own terms. In the <u>Gibson</u> case, the term of the plaintiff's insurance policy ended on April 20, 1983. The policy was not renewed, and the insurance company did not send notice to the plaintiff that the policy had terminated. After the termination of the policy, the plaintiff was involved in an automobile accident on May 5, 1983, and sued the insurance company under the policy. The plaintiff's theory was that he was entitled to notice of cancellation pursuant to cancellation statutes in Tenn. Code Ann. § 56-7-1301, *et seq.* In holding that there was no breach of any contractual duties owed by the insurance company to its insured, the court stated:

> There is no evidence of cancellation in the record and the case was tried on the issue of cancellation; however, all the evidence establishes there was no policy in force at the time of the accident. The policy was exhibited to the complaint and by its own terms terminated on April 20 when no premium was paid by plaintiff for a renewal policy.
>
> * * *
>
> The general rule in all jurisdictions appears to be that statutes prescribing methods of cancelling insurance policies are not applicable where the insured simply fails to pay the renewal premium by the due date on the basis the policy has lapsed and expired by its own terms. *State Farm Mutual Ins. Co. v. White,* 563 F.2d 971 (9th Cir. 1977); *Nationwide Mutual Ins. Co. v. Williams,* 55 Or. App. 442, 638 P.2d 487 (1982); *American Family Mutual Ins. Co. v. Ramsey,* 425 N.E.2d 243 (Ind. App. 1981); *Edwards v. York,* 370 So. 2d 641 (La. App. 1979); *Williams v. Security Mutual Cas. Co.,* 377 So. 2d 733 (Fla. App. 1979).

<u>Gibson</u>, 719 S.W.2d at 301.

It is the theory of the appellee Bank that after an insurance policy is terminated by its own terms, the Insurance Company has the duty to give notice to a lienholder that the policy has been "canceled," pursuant to the cancellation and notice clauses, as in this

policy. In support of this contention, the Bank cites <u>Chrysler Credit Corp. v. Noles</u>, 813 S.W.2d 437 (Tenn. Ct. App. 1990). The loss payable clause in the <u>Noles</u> case was similar to that in the case before us.

In the <u>Noles</u> case, the renewal date for the insurance policy was May 19, 1987, but it was not renewed by the insured. However, in <u>Noles</u>, the insurer gave notice to the lienholder that it was covered for ten (10) days after the notice was given.[2] Within the ten day period, the insured wrecked the automobile, and the insurance company paid the lienholder for the loss. The insurance company then sued the insured under a subrogation clause in the policy to recover the amount paid to the lienholder. The <u>Noles</u> court held that the subrogation claim could be maintained by the insurer against its insured, saying:

> Since Chrysler Credit's rights under the loss payable provision could not be affected by the appellee's neglect, it is clear that even after appellees allowed the policy to lapse, Chrysler Credit still had the remedy provided.

<u>Noles</u>, 813 S.W.2d at 439.

As we understand the above holding, it is that the insurance carrier, strictly under the facts of that case and in spite of the fact of the insured's neglect, still had the right to pursue the subrogation claim against this insured, this being a remedy provided in the loss payable clause. We do not think that the <u>Noles</u> court intended to obliterate the distinctions in the <u>Gibson</u> court between the terms "cancellation" and "expiration." We adhere to the <u>Gibson</u> holding.

There being no Tennessee case factually in point with the case now before us, we have looked to authority from other jurisdictions. We have found three cases with the same facts as in this case and with which we are in full agreement: <u>First National Bank in Sioux City v. Watts</u>, 462 N.W.2d 922 (Iowa 1990); <u>Reece v. Massachusetts Fire & Marine Ins. Co.</u>, 107 Ga. App. 581, 130 S.E.2d 782 (1963); <u>Waynesville Security Bank v. Stuyvesant Ins. Co.</u>, 499 S.W.2d 218 (Mo. Ct. App. 1973). These cases make the same distinction between the meaning of the words "cancellation" and "expiration" as does the <u>Gibson</u> case.

---

[2]All of the provisions in the loss payable clause were not stated in the <u>Noles</u> opinion, and it does not otherwise state why the insurance company gave notice of the termination of the policy. The holding in <u>Noles</u> was that the insurance company "acted properly" by paying the lienholder.

The root of much confusion in this case is caused by the use of the terms "cancellation" and "expiration" as being synonymous. The policy was not canceled by anyone prior to the accident; it terminated by its own provisions on August 20, 1997. The following statements by the Supreme Court of Iowa in the Watts case is applicable here:

> The difference between the two terms is succinctly stated in Waynesville where the court rejected similar reasoning:
>
> "Cancellation," as used in insurance law, means termination of a policy prior to the expiration of the policy period by act of one or all of the parties; "termination" refers to the expiration of the policy by lapse of the policy period. In this case, the policy "terminated" or "expired" by lapse of the policy period. [The lienholder's] argument that it did not receive notice of cancellation is therefore wholly without merit.
>
> Waynesville, 499 S.W.2d at 220; see also Travelers Indem. Co. v. Fields, 317 N.W.2d 176, 185 (Iowa 1982) (cancellation and nonrenewal are not synonymous).
>
> Here the policy terminated or expired by lapse of the policy period. The ten-day notice provision for cancellation in the loss payable clause simply did not apply.

Watts, 462 N.W.2d at 926-27.

Also, the following statement from Watts is applicable in the case under consideration:

> One such argument centers around the nature of the loss payable clause. The district court here correctly noted that the loss payable clause is a union or standard mortgage clause. Such a clause expressly provides that the right of the mortgagee to recover is not invalidated by any act or neglect of the owner. See Critchlow v. Reliance Mut. Ins. Ass'n, 198 Iowa 1086, 1091, 197 N.W. 318, 321 (1924). The court also properly noted that a loss payable clause operates as a separate contract between the mortgagee and the insurer.
>
> But we think the court erred when it determined that Watts' failure to pay the renewal premium did not invalidate the policy as to the bank. The court incorrectly concluded that Watts' failure was an "act or neglect of the owner" under the loss payable clause. The language "act or neglect of the owner" in a loss payable clause refers to breach of policy conditions by the owner. Waynesville, 499 S.W.2d at 221; General Motors Accept. Corp. v. Western Fire Ins. Co., 457 S.W.2d 234, 236 (Mo. App. 1970). The loss payable clause operates as in independent contract between the insurer and the loss payee lienholder. So the owner cannot defeat the loss payee's interest by breaching a condition of the policy. General Motors Accept. Corp., 457 S.W.2d at 236.
>
> But there is no condition or provision in the policy that required Watts to renew it. See Waynesville, 499 S.W.2d at 221. So Watts breached no condition or provision of the policy when he failed to pay the renewal premium.

<u>Watts</u>, 462 N.W.2d at 926.

For the same reasons given in the above cited authorities, we hold that the Insurance Company was not required to give the Bank lienholder notice of the expiration or lapse of the policy under the cancellation.[3] The policy was not canceled but expired under its own terms. The Bank was plainly told in the additional interest notice that the policy period was continuous from 7/29/1997 to 8/20/1997. The insurance contract required no further notice of the dates of the policy period.

The Bank argues that the statement in the first additional interest notice that the policy period is continuous, in effect, makes this a perpetual policy as to the lienholder and entitles it to notice of cancellation after lapse of the policy. The meaning of this language is plain; it simply means that the coverage is continuous during the stated "Policy Period." The first issue is sustained.

In the second issue, the Insurance Company attacks the holding of the trial judge that the Insurance Company waived the lapse of coverage when it reinstated the policy of insurance effective one day after the loss.

As previously stated, the accident occurred on September 11, 1997, after the policy had lapsed. On the next day, September 12, 1997, the Insured went to the insurance agent to pay a renewal premium and told the agent that the insured vehicle had been wrecked. The agent informed the Insured that the policy had lapsed and accepted the payment of a renewal premium on the policy, but the agent informed the Insured that the renewal would not cover the accident and that the renewal would not be effective until midnight September 12, 1997. The agent issued an additional interest notice to the Bank that covered the period from September 13, 1997, to September 13, 1998.

The trial judge held in part:

> The court finds that by accepting payment for the vehicle knowing it was a total loss before the renewal payment is inconsistent with providing coverage with a lapse; therefore, the insurance company waived the lapse in coverage and provided continuous coverage.

The trial judge based its holding on the unreported decision of this court styled

---

[3]The policy is not in the record. The documents before us that were delivered to the Bank did not contain provisions requiring the Insured to renew it. Further, there was no provision for a grace period.

8

<u>Tennessee Farmers Mutual Insurance Co. v. Davis</u>, 1993 W.L. 312688, (Tenn. Ct. App. 1993). *perm. app. not applied for.* In that case, the insured sent a check to the insurance company on March 2, 1990, to renew a policy that expired on March 7, 1990. The check was dishonored for insufficient funds, and the insurance company notified the insurer of this fact by letter dated March 21, 1990, and told him that if he wished to reinstate the policy, he should contact the insurance company immediately. Afterwards, the following transpired:

> On March 22, 1990, defendant went to the local farm bureau office in Bolivar and paid $168.00 in cash which the Tennessee Farmers' agent duly sent to the company. In the meantime, on March 18, 1990, Davis' truck was involved in a collision which resulted in a total loss of the truck. Tennessee Farmers was notified of this loss on March 19, 1990, and a Tennessee Farmers' claims adjuster met with Davis on March 19th to obtain the details of the loss.

1993 W.L. 312688, at *1.

On these facts, the court held:

In the case at bar,

> <u>Tennessee Farmers knew that the vehicle insured had been deemed a total loss</u>. Acceptance of a premium payment for property that has been <u>totally destroyed</u> is absolutely inconsistent with providing coverage from and after the date of payment of the premium. To the contrary, Tennessee Farmers' acceptance of the premium is consistent with providing continuous coverage on the F-150 truck, since to consider otherwise would indicate Tennessee Farmers' intention to insure a total loss vehicle. If we are to say that the premium was paid for the period subsequent to March 22, 1990, we would be saying that a premium was paid on property which was virtually nonexistent. This cannot be. Accordingly, we hold that Tennessee Farmer waived the lapse in coverage and provided continuous coverage under the insurance policy. (Emphasis added).

*Id.* at *4.

The <u>Davis</u> case is factually distinguished from the case at bar. In this case, the trial judge's finding that the Insurance Company accepted payment of the premium after the accident knowing that the vehicle was a total loss is not supported by any evidence. There was evidence that the insurance agent was informed that the vehicle had been in an accident or had been wrecked, but the extent and nature of the damage, if any, was not mentioned, according to the record. Moreover, there is no evidence in the record whatsoever to establish that the insured vehicle was, in fact, a total loss. There was

evidence as to the value of the vehicle before the accident, but no evidence as to its value after the accident. There is no reference or description of any damage to the vehicle. Therefore, the decision in the Davis case does not apply. We find that the trial court erred in holding that the Insurance Company waived the lapse in coverage.

The judgment of the trial court is reversed, and the case is dismissed. The plaintiff, Munford Union Bank, will pay the costs.

_____
F. LLOYD TATUM, SENIOR JUDGE


CONCUR:


_____
ALAN E. HIGHERS, JUDGE


_____
DAVID R. FARMER, JUDGE